IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| 1. HOLLY ANN SACKS, Individually and and as Representative of the Estate of RICHARD TODD SACKS, 2. MELVIN PHILLIP SACKS, and 3. MARILYN PROCTOR, | § § § § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. 5-04-073 JURY |
| VS. | § § | |
| 1. FOUR SEASONS HOTELS LIMITED and 2. FOUR SEASONS PUNTA MITA, S.A. de C.V., | § § § § | |
| Defendants. | § § | |

## MOTION FOR CERTIFICATION PURSUANT TO 28 U.S.C. § 1292(b)

Defendants Four Seasons Hotels Limited ("FSHL") and Four Seasons Punta Mita, S.A. de C.V. (hereinafter collectively referred to as "Defendants"), respectfully request entry of an order certifying – pursuant to 28 U.S.C. § 1292(b) – the following issues for immediate appeal: 1) denial of Defendants' *forum non conveniens* motion to dismiss; 2) application of Texas law to liability pursuant to Rule 44.1; and 3) application of Texas law to damages pursuant to Rule 44.1.

## I.       INTRODUCTION.

Defendants filed their initial *forum non conveniens* and Rule 44.1 motions in July 2005. Plaintiffs requested leave of court to conduct certain discovery – including several depositions of Defendants' employees – claiming that the discovery was necessary for them to respond to Defendants' motions. Magistrate Craven granted Plaintiffs leave to conduct the discovery. After completion of the discovery, Plaintiffs filed their response briefs on November 18, 2005.

Defendants then took the depositions of their two experts on Mexican law that Plaintiffs proffered with their response briefs. Following these depositions, Defendants filed their reply briefs on February 1, 2006. Magistrate Craven heard oral arguments on the motions on February 21, 2006.[1]  On March 7, 2006, Magistrate Craven filed her Report and Recommendations ("R&R"), recommending denying Defendants' *forum non conveniens* motion to dismiss and further recommending applying the law of Texas – over the law of Nayarit, Mexico – to liability and damages issues. Defendants filed timely objections to the R&R on March 21, 2005. After conducting a *de novo* review, Judge Folsom entered an order on March 24, 2005 overruling Defendants' objections and adopting the R&R without presenting any further detailed analysis or discussion.

Judge Folsom's March 24, 2005 order on Defendants' FNC and Rule 44.1 motions involves controlling questions of law as to which there are substantial ground for difference of opinion. Further, an immediate appeal from the order may materially advance the ultimate termination of the litigation. For all the reasons stated herein, this Court must certify the FNC and Rule 44.1 issues for immediate appeal.

## II.    LEGAL STANDARD FOR CERTIFICATION PURSUANT TO 28 U.S.C. § 1292(b).

This Court's order denying Defendants' FNC motion and applying Texas law to liability and damages under Rule 44.1 is appealable on an interlocutory basis only under the authority of 28 U.S.C. § 1292(b). In pertinent part, that section of the code provides:

> **When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially**

---

[1] A copy of the transcript from the oral argument is attached hereto as **Exhibit 1**. This transcript was not yet available at the time Defendants filed their objections to the R&R.

> **advance the ultimate termination of the litigation, he shall so state in writing in such order.**

28 U.S.C. § 1292(b). Judge Folsom did not *sua sponte* certify the foregoing issues for appeal. Therefore, Defendants file this motion requesting such certification.

### III.   THE ORDER DENYING DEFENDANTS' FORUM NON CONVENIENS MOTION TO DISMISS MUST BE CERTIFIED FOR IMMEDIATE APPEAL.

A leading Fifth Circuit case regarding interlocutory appeals upon denial of a forum non conveniens motion to dismiss is *Gonzalez v. Naviera Neptuno A.A.*, 832 F.2d 876 (5th Cir. 1987). In *Gonzalez,* Peruvians brought a wrongful death action against a Peruvian shipping company under the Jones Act and maritime law. The shipping company filed a forum non conveniens motion to dismiss. The trial court denied the motion and refused to certify the issue for interlocutory appeal. *Id.* at 877-878. Following a trial, the defendant appealed the trial court's denial of the FNC motion. The Fifth Circuit reversed and remanded, finding that the case should have been dismissed on FNC grounds. *Id.* at 881-882.

In reversing the trial court's denial of the FNC motion to dismiss, the Fifth Circuit noted that "trial judges should be hospitable to applications for interlocutory appeals under 28 U.S.C. § 1292(b)" after granting or denying a FNC motion to dismiss. *Id.* at 881. The court went on to state "pretrial certification of this issue not only obviates a possible useless trial, but affords an effective review by this court." *Id.*

In a similar case, the Fifth Circuit – upon a petition for writ of mandamus – requested that the Eastern District of Texas certify for interlocutory appeal its denial of a defendant's FNC motion to dismiss. *McClelland Engineers, Inc. v. Munusamy,* 784 F.2d 1313, 1314-1316 (5th Cir. 1986) (overruled on other grounds in *In re AIR CRASH DISASTER NEAR NEW ORLEANS, LOUISIANA ON JULY 9, 1982,* 821 F.2d 1147 (5th Cir. 1987). *McClelland* involved three personal injury admiralty cases – consolidated for purposes of resolving the *forum non*

*conveniens* issues – involving persons that were injured outside the boarders of the United States, yet all filed lawsuits in the United States. *Id.* at 1315.

Based on the foregoing, the Fifth Circuit recognizes the importance of accepting an interlocutory appeal of a trial court's order on a FNC motion to dismiss. This is so because of the involvement of controlling questions of law as to which there are substantial ground for difference of opinion. Further, an immediate appeal from the order may materially advance the ultimate termination of the litigation. Defendants discuss, in turn below, the individual issues for which there are substantial ground for difference of opinion.

### a. Nayarit, Mexico is an "Available" Alternative Forum in This Case.

#### i. This Court's Finding that Nayarit, Mexico is Not an "Available" Alternative Forum in This Case is in Direct Conflict With Established Fifth Circuit Precedent And This Issue Involves a Controlling Question of Law as to Which There is Substantial Ground For Difference of Opinion.

The Fifth Circuit has held that a defendant's submission to the jurisdiction of an alternative forum renders that forum "available" for purposes of *forum non conveniens*; therefore, no more analysis of this issue is required.[2] *Veba-Chemie A.G. v. M/V Getafix,* 711 F.2d 1243, 1245 (5th Cir. 1983) (holding that the defendant's submission to the jurisdiction of a Dutch court as a condition of dismissal rendered that forum "available" for purposes of the *forum non conveniens* analysis).

Pursuant to this Fifth Circuit precedent, Defendants submitted themselves to the jurisdiction of the courts of Nayarit, Mexico. *See Defendants' FNC Reply Brief,* pp. 1 and 15. This stipulation solidified Nayarit, Mexico as an "Available" alternative forum, without the need for any further inquiry. Therefore, this Court's finding that Nayarit, Mexico was not an

---

[2] This basic tenet of the forum non conveniens doctrine is also recognized by U.S. Circuit Courts of Appeal throughout the United States. *Kamel v. Hill-Rom Co. Inc.,* 108 F.3d 799, 803 (7th Cir. 1997); *Schertenleib v. Traum,* 589 F.2d 1156, 1160 (2nd Cir. 1978); *Gschwind v. Cessna Aircraft Co.,* 161 F.3d 602, 606 (10th Cir. 1998).

4

"Available" alternative forum in this case is in direct conflict with binding Fifth Circuit precedent.

> **ii.  This Court's Finding that Nayarit, Mexico is Not "Available" Due to The Nayarit Statute of Limitations is in Direct Conflict With The Record And This Issue Involves a Controlling Question of Law as to Which There is Substantial Ground For Difference of Opinion.**

Plaintiffs argue – using their expert's affidavit as support – that Article 1145 of the Civil Code for the State of Nayarit prohibits them from re-filing this case in Nayarit if this Court dismisses this case on *forum non conveniens* grounds.  Article 1145 establishes Nayarit's two-year statute of limitations, which, according to plaintiffs, expired in June 2005 for their claims. However, such an argument, as accepted by this Court, ignores the provision of Nayarit law that tolls the statute of limitations when a lawsuit is originally timely-filed in one jurisdiction, but later re-filed in another jurisdiction for procedural reasons such as transfer or *forum non conveniens*.  See Section IV, Article 148 of the CCPN attached as Exhibit C to Defendants' FNC Reply Brief.  The expert witness on Mexican law whom plaintiffs have submitted in this case, Dr. Pereznieto, admitted during his deposition that Nayarit law includes a provision for tolling of the statute of limitations.  See pp. 139-140 of Exhibit A to Defendants' FNC Reply Brief.  Both of Defendants' Nayarit law experts agree and reference, in their submissions, section IV of Article 148 of the CCPN, which provides that the filing of the lawsuit tolls the statute of limitations.  See ¶ 8 of Exhibit B to Defendants' FNC Reply Brief; see also translations of Code attached as Exhibit C to Defendants' FNC Reply Brief.  The plain language of Section IV of Article 148 of the CCPN does not distinguish between the filing of a lawsuit before a local judge or a judge of a different jurisdiction, including any foreign jurisdiction.  *Id.*  Therefore, it is undisputed among all of the experts on Mexican law that Plaintiffs would not be barred by the

Nayarit statute of limitations from re-filing this case there following a FNC dismissal by this Court.

### iii. This Court's Finding that Nayarit, Mexico is Not "Available" Due to The Theory of "Preemptive Jurisdiction" is in Direct Conflict With The Record And This Issue Involves a Controlling Question of Law as to Which There is Substantial Ground For Difference of Opinion.

It is important to note that the actual opinions of all four of the proffered experts on Mexican law (two from Plaintiffs and two from Defendants) demonstrate that the theory of "preemptive jurisdiction" is not applicable to the instant case because of its specific procedural posture.

All the experts agreed that, under the law of Nayarit, when there are two defendants, jurisdiction is proper in the forum of either defendant's domicile where the plaintiff first files suit, but the plaintiff cannot choose a forum of his/her own domicile if one of the defendants is not also domiciled there.  See pp. 126-128 of Exhibit A to Defendants' FNC Reply Brief; see also ¶ 13 of Exhibit B to Defendants' FNC Reply Brief.  In the instant case, Plaintiffs could have filed in Nayarit, Mexico, or Ontario, Canada, and either one of those forums would have been considered appropriate under the law of Nayarit.  However, Plaintiffs chose to file suit in Texas instead.  The law of Nayarit does not provide that jurisdiction is appropriate in a wrongful death case where the decedent resided or where the plaintiffs reside.  Id.

Finding that the theory of "preemptive jurisdiction" applies in the instant case such that Plaintiffs filing of this action in Texas (a forum lacking jurisdiction under Nayarit law) automatically precludes the subsequent transfer to or re-filing of this case in Nayarit or Ontario (the only jurisdictions recognized as proper under Nayarit law) would render all of the laws and rules on appropriate forum, jurisdiction, and domicile absolutely meaningless.  If "preemptive jurisdiction" applies even if a plaintiff files in a forum not recognized as proper under the law

(such as the instant case) then a plaintiff would never have to follow the law and rules on proper forum and jurisdiction because the plaintiff could file in any forum whatsoever and just raise the "preemptive jurisdiction" theory when a defendant or the court raises a question on the proper forum. Further, such a result would automatically destroy, in its entirety, any future application of the long established doctrine of *forum non conveniens*. These results would be unfair and contrary to law.

If Plaintiffs re-file this case in Nayarit – Punta Mita's domicile – then that filing will be considered to be the <u>first</u> filing of this suit where one of Defendants is domiciled. Therefore, under the law of Nayarit, as discussed above, jurisdiction would be proper in Nayarit.

This Court further found that any judge in Nayarit would automatically dismiss a re-filing of this case following a *forum non conveniens* dismissal from this Court because Plaintiffs would not be re-filing the case there voluntarily. (See R&R, p. 12). The R&R cites Plaintiffs' experts' recitation of Article 8 of the CCPN for the proposition that a plaintiff cannot be forced to file an action against his/her will. *Id.* However, this argument is based on the expert's flawed assumption that an FNC dismissal from this Court mandates transfer of this case to a court in Nayarit, Mexico. In fact, an FNC dismissal of this case by this Court is just that - a dismissal. Plaintiffs would be within their rights to re-file this case in Nayarit after an FNC dismissal from this Court. If they so choose to re-file in Nayarit, the act of re-filing would be a voluntary act on their part. Under cross-examination on this point at his deposition, Plaintiffs' Mexican law expert, Dr. Pereznieto, agreed that Plaintiffs' re-filing of this case in Nayarit would be a voluntary act, so long as this Court issues an FNC <u>dismissal</u> as opposed to an order <u>transferring</u> the case to Nayarit. See pp. 140-141 of Exhibit A to Defendants' FNC Reply Brief. Such a voluntary re-filing would not, therefore, violate Article 8 of the CCPN.

>    **iv.  This Court's Finding that Nayarit, Mexico is Not "Available" Because
>         Nayarit Courts Lack Jurisdiction Over FSHL is in Direct Conflict
>         With The Record And This Issue Involves a Controlling Question of
>         Law as to Which There is Substantial Ground For Difference of
>         Opinion.**

Contrary to this Court's finding, there is no concern about jurisdiction over the Canadian

defendant, FSHL, because it stipulated to jurisdiction in a Nayarit court.  It is clear under Nayarit

law that FSHL may agree to submit to the jurisdiction of the courts of Nayarit in this case.  See

the following Exhibits to Defendants' FNC Reply Brief: Exhibit A at pp. 144-146; Exhibit B at

17; and Exhibit G at p. 120.

Further, this Court's reliance on *Garcia v. Ford Motor Company* is not dispositive.  (See

R&R, p. 12).  The *Garcia* case, and its history in Mexico, was recently discussed in the case

*Juanes v. Continental Tire North America, Inc.*, 2005 WL 2347218 (S.D. Ill. 2005).  It should be

noted that Dr. Pereznieto, Plaintiffs' expert on Mexican law in the instant case, was also an

expert on Mexican law in the *Juanes* case, where he rendered virtually identical opinions to those

asserted here.  The *Juanes* court rejected Dr. Pereznieto's analysis of the issues and granted the

FNC motion to dismiss.  *Id.*

In the instant case, Dr. Pereznieto's discussion of the *Garcia* case – which this Court

relies upon – omitted the crucial information that the Jalisco Supreme Court rejected the

plaintiffs' appeal because the defendants had not expressly designated, in a clear and precise

way, the identity of the Jalisco judge under whose jurisdiction they voluntarily subjected

themselves, in violation of that Jalisco Code of Civil Procedure.  *Juanes*, 2005 WL 2347218, * 2.

The Mexican court's reasoning is important because it confirms that the Garcia plaintiffs could

have sued Ford and Michelin in the courts of Jalisco, Mexico, if the defendants announced

clearly and conclusively the exact forum and designated with precision the judge to whom they

8

would submit. *Id.* For all the foregoing reasons, this Court's application of the *Garcia* case based on Mr. Pereznieto's affidavit was misplaced because the actual opinion in *Garcia* does not support this Court's findings.

> **v. This Court's Finding that Nayarit, Mexico is Not "Available" Because Alternative Rules on Jurisdiction in Nayarit Provide That Jurisdiction May Also Lie Where The Case Originates is in Direct Conflict With The Record And This Issue Involves a Controlling Question of Law as to Which There is Substantial Ground For Difference of Opinion.**

This case did <u>not</u> "originate" in Canada. The uncontradicted deposition testimony shows that any alleged negligence occurred in Nayarit, Mexico. It is improper to rely upon the allegations contained in Plaintiffs' Complaint suggesting the contrary when the evidentiary facts of record actually contradict the mere allegations in the Complaint.

The hotel general manager, Christian Clerc, testified that the hotel has a contract with a local medical services provider, Servicios Medicos de la Bahia, to provide physicians at the hotel 24-hours a day. See pp. 83-84 of Exhibit D to Defendants' FNC Reply Brief. Once the medical doctor gets involved in treating a hotel guest, only he or she has the authority to direct the treatment, including how and when to transport a guest to a medical facility. *Id.* at 54. As the most senior member of management at the subject hotel, Mr. Clerc reports to the Mexican owners/asset managers of the hotel. He does <u>not</u> report to Four Season in Canada. *Id.* at 78-80. Four Seasons in Canada has never requested to review the hotel's "Code Blue" policies and procedures. *Id.* at 87.

The hotel manager, Martin Rhomberg, testified that he relies on the contract doctors to determine what services are appropriate and what equipment should be kept at the hotel. See pp. 66-67 of Exhibit E to Defendants' FNC Reply Brief. Senior Vice President of Operations and Development for Four Seasons Hotels Ltd., Charles Ferraro, testified that, on the specific issue

of medical services for guests, Four Seasons Hotels Ltd., specifically advised the subject hotel that guest medical services would have to be dealt with locally because of the location of the property. See pp. 37-41 of Exhibit F to Defendants' FNC Reply Brief. According to Ferraro, the local Mexican ownership group was ultimately responsible for coming up with a medical services plan because they would best understand whether the plan was adequate given their knowledge of Mexican law, customs and tradition. *Id.* at 37-41, and 68.

The testimony by Messrs. Ferraro, Clerc, and Rhomberg is uncontradicted.   Plaintiffs cannot overcome the evidence that the Canadian Defendant did <u>not</u> draft, review or enforce the hotel's procedures relating to medical treatment of guests.  Plaintiffs cannot persuasively argue that Four Seasons Hotels Ltd., committed the alleged tortious acts or omissions that caused Richard Sacks' death or that those actions transpired in Canada.  Finally, there is simply no <u>evidence</u> that any of these policies or procedures were made in the United States, as suggested by Plaintiffs and in the R&R.[3]

> **vi. This Court's R&R Finding that a "Return Jurisdiction" Clause Does Not Change Whether Nayarit, Mexico is "Available" is in Direct Conflict With Established Fifth Circuit Precedent And This Issue Involves a Controlling Question of Law as to Which There is Substantial Ground For Difference of Opinion.**

In discussing the doctrine of *forum non conveniens,* the Fifth Circuit has recognized the ability of a U.S. court entering the dismissal to allow for the plaintiff to return to the U.S. forum if reinstatement in the alternative forum is obstructed.  *In re Air Crash Disaster Near New Orleans,* 821 F.2d 1147, 1166 (5th Cir. 1987)(en banc), *vacated by Pan Am. World Airways, Inc.*

---

[3] It is interesting to note that Plaintiffs seem to lay their entire legal theory on alleged corporate policies and procedures promulgated in Canada when Plaintiffs do not have in their possession the text of any policies and procedures promulgated in Canada that address responding to medical emergencies of guests at the subject hotel.  It is disingenuous of them to claim reliance on policies and procedures without identifying the policies and procedures and how they were inadequate.  Such identification by Plaintiffs is particularly necessary when the totality of the evidentiary facts of record establish that the Canadian company did not promulgate any policies and procedures that were in effect at the subject hotel at the time of the events surrounding the Sacks medical emergency.

*v. Lopez,* 490 U.S. 1032 (1989), *reinstated except as to damages by Air Crash Disaster v. Pan Am. World Airways, Inc.,* 883 F.2d 17 (5ᵗʰ Cir. 1989)(en banc).  Conditioning a FNC dismissal with the safety mechanism of a "return jurisdiction" clause in the court order granting the FNC dismissal is an accepted practice in other jurisdictions as well.  See *Juanes,* 2005 WL 2347218, * 2; see also *Gschwind v. Cessna Aircraft Co.,* 161 F.3d 602, 607 (10ᵗʰ Cir. 1998).  In the instant case, a return jurisdiction clause would allow Plaintiffs to return to this Court if the Nayarit court refuses jurisdiction when Plaintiffs re-file there.  *Id.*  This offers Plaintiffs absolute protection in this case.

### b.   Nayarit, Mexico is an "Adequate" Alternative Forum in This Case.

### i.   This Court's Finding that Nayarit, Mexico is Not an "Adequate" Alternative Forum in This Case Due to Nayarit Law on Damages is in Direct Conflict With Established U.S. Supreme Court and Fifth Circuit Precedent And This Issue Involves a Controlling Question of Law as to Which There is Substantial Ground For Difference of Opinion.

In the *forum non conveniens* context, a plaintiff cannot defeat a motion to dismiss "merely by showing that the substantive law that would be applied in the alternative forum is less favorable to the plaintiffs than that of the present forum."  *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 247 (1981); see also *Diaz v. Mexicana de Avion, S.A.,* 1987 WL 275695 (W.D. Tex. January 23, 1987).  A foreign forum is considered "adequate" when the parties will not be deprived of <u>all</u> remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court.  *Vasquez v. Bridgestone/Firestone, Inc.,* 325 F.3d 665, 671 (5ᵗʰ Cir. 2003) (Mexico is adequate alternative forum in wrongful death case).  The Supreme Court in *Piper* held "The Court of Appeals erred in holding that plaintiffs may defeat a motion to dismiss on the ground of *forum non conveniens* merely by showing that the substantive law that would be applied in the alternative forum is less favorable to the plaintiffs than that of the present forum.

The possibility of a change in substantive law should ordinarily not be given conclusive or even substantial weight in the *forum non conveniens* inquiry.  *Piper,* 454 U.S. at 247.

> The court in *Piper* went on to note that:
>
> > ... **if conclusive or substantial weight were given to the possibility of a change in law, the *forum non conveniens* doctrine would become virtually useless.   Jurisdiction and venue requirements are often easily satisfied.   As a result, many plaintiffs are able to choose from among several forums.   Ordinarily, these plaintiffs will select that forum whose choice-of-law rules are most advantageous.   Thus, if the possibility of an unfavorable change in substantive law is given substantial weight in the *forum non conveniens* inquiry, dismissal would rarely be proper.**

*Id.* at 250.  The court also noted that such an approach would pose substantial practical problems. More specifically, "[I]f the possibility of a change in law were given substantial weight, deciding motions to dismiss on the ground of *forum non conveniens* would become quite difficult."  *Id.* at 251.  Consequently, "dismissal would be appropriate only if the court concluded that the law applied by the alternative forum is as favorable to the plaintiff as that of the chosen forum."  *Id.* The court found that such an analysis is not proper under the doctrine of *forum non conveniens.*

The R&R, as adopted by Judge Folsom, is inaccurate where it sets forth that Defendants relied upon case law where the plaintiffs resided in Mexico.  (See R&R, p. 12).   While Defendants cited some cases where the plaintiffs resided in Mexico, Defendants specifically cited at least five (5) cases that were dismissed on FNC grounds where all or some of the plaintiffs were residents of the United States.  *See* Defendants FNC Motion, pp. 7-17.  It is important to note that several of those cases involved personal injuries suffered at hotel-resorts located outside of the United States.  *Id.*  Neither Plaintiffs nor this Court cited to case law where a court denied a FNC motion where the plaintiff suffered a personal injury at a hotel-resort located outside of the United States.

Finally, Dr. Pereznieto's affidavit contained no meaningful calculations of how he reached the value of $9,500. See ¶¶ 55-56 of Exhibit A to Plaintiffs' FNC Response Brief. Further, this figure offered by Pereznieto completely disregards the potential recovery of moral damages under the law of Nayarit, as well as medical expenses and funeral expenses – which are unlimited. *Id.* Based on all the evidence before this Court, the law of Nayarit would provide Plaintiffs with a remedy. The Nayarit remedy need not be identical or even substantially similar to what Plaintiffs might recover in Texas. This Court's findings are directly contrary to well settled law on this issue.

> **ii. This Court's Finding that Nayarit, Mexico is Not an "Adequate" Alternative Forum in This Case Because Proceedings in Mexico Would Not be Concluded Within a Reasonable Time Frame is in Direct Conflict With The Record And This Issue Involves a Controlling Question of Law as to Which There is Substantial Ground For Difference of Opinion.**

Under the forum non conveniens analysis, determining whether an alternative forum is "adequate" does not involve a comparison of the court congestion of the competing forums – the issue is properly analyzed as one of the public interest factors. Regardless, the issue is discussed in the R&R in the context of whether Nayarit is an "Adequate" alternative forum. (See R&R, p. 14). On this issue, it is telling that Plaintiffs cite to, but do not quote, Dr. Pereznieto's affidavit to support their argument on the time it would take this case to progress in the courts of Nayarit. *See* Plaintiffs' FNC Response Brief, p. 15-16. However, in paragraph 48 of Dr. Pereznieto's affidavit, he opines that the trial of this case would take "from 6 months to one and a half years." *See* Exhibit A to Plaintiffs' FNC Response Brief. If either party chose to appeal the trial court's decision to the appellate court, that would take an additional "3 to 9 months." *Id.* If the losing party at the appellate court decided to take an appeal to the highest court, that would generally take another "6 months to one year." Accepting these number as true, Plaintiffs' own expert is

opining that it could take as little as 15 months to complete a trial <u>and</u> two levels of appeal of this dispute in Nayarit.

Based upon Plaintiffs' expert's own affidavit, proceedings in Mexico would most likely be concluded within a shorter period of time than if this case proceeds in this Court.  Within our legal system, the instant case could take substantially longer than 15 months to complete a trial <u>and</u> two levels of appeal.  This Court's finding that proceedings in Mexico would not be concluded within a reasonable time is in complete conflict with the evidence presented by Plaintiffs' own expert and the record in this case.

> iii. **This Court's Finding that Nayarit, Mexico is Not an "Adequate" Alternative Forum in This Case Because Plaintiffs Argued That no Mexican Attorney Would Take This Case on a Contingency Fee Basis is Not Supported by Law And This Issue Involves a Controlling Question of Law as to Which There is Substantial Ground For Difference of Opinion.**

Plaintiffs argue, and this Court agreed, that a FNC dismissal is inappropriate in this case because Plaintiffs would not be able to retain a Mexican attorney under a contingency fee agreement.  (See R&R, p. 14).  However, neither Plaintiffs nor this Court cited <u>any</u> legal authority establishing that this issue is even relevant to the FNC analysis.

> iv. **This Court's Finding that Nayarit, Mexico is Not an "Adequate" Alternative Forum in This Case Because Mexico Does Not Have Procedural Safeguards to Permit Plaintiffs to Develop Their Evidence is in Direct Conflict With The Law of Nayarit as Cited in The Record And This Issue Involves a Controlling Question of Law as to Which There is Substantial Ground For Difference of Opinion.**

Dr. Pereznieto incorrectly stated the law of Nayarit relative to certain procedures applicable in the courts there.  The following demonstrates that this Court is incorrect to state "… discovery as practiced in the United States does not exist in Mexico."  (See R&R, p. 14).

While the procedures are not identical, the procedures in Mexico are adequate for the parties to litigate this case.

The obligation to produce documents in the courts of Nayarit is codified in Article 188 of the CCPN, which provides as follows:

> *Art. 188. If the document is kept in either the books or papers of a business or an industrial establishment, he who requests the document or evidence of it must determine with precision which it is, and the copy should be certified at the office of the establishment, with the directors under no obligation to bring to court the accounting books, as only the designated entries or documents need be presented.*

See ¶ 21 of Exhibit B to Defendants' FNC Reply Brief. In addition, section VI of Article 199 of the CCPN provides that:

> *Art. 199. Before holding the hearing, the evidence should be opportunely readied so that it may be admitted and for that the procedure is as follows: ...*
> *VI. Order delivery of copies, documents, books and other instruments submitted by the parties ordering the examination of the documents deemed necessary."*

*Id.* at ¶ 22.

It is not true that all witness testimony must be rendered in the courthouse in Mexico to be valid. *Id.* at ¶ 23-26. Actually, Article 194 of the CCPN provides that when a witness has a domicile outside of the jurisdiction of the court in Nayarit, its testimony may be taken through a rogatory letter. *Id.* These articles demonstrate that valid witness testimony in Mexico may be obtained through the Mexican Foreign Service in Texas and Canada, or through the local judicial authorities in those jurisdictions.

It is not true that expert witnesses must be chosen from an official list acceptable to the judge. Articles 190 and 191 demonstrate that expert witness testimony is conducted in a manner completely different from the one suggested by Dr. Pereznieto. Instead of the expert witness

being appointed from a restricted official list, experts are appointed by the parties themselves, or from a list provided by the parties. *Id.* at ¶¶ 27-28. More specifically, Articles 190 and 191 of the CCPN provide as follows:

> *Art. 190. The expert proof is presented by supplying the name and address of the individual designated as the expert with special knowledge in the science, art or technique to which the question about which his opinion will be heard pertains; if legally regulated, the subjects he will cover must be stated. If the science, art or technique were not legally regulated, or even if they were, in the absence of experts on site any knowledgeable individual may be designated.*
>
> *Art. 191. Should those in charge of designating an expert be unable to come to an agreement, the judge will designate one among those suggested by the interested parties, and the designated individual will carry out the procedure.*

This Court also notes that any discovery conducted thus far in the case would be lost if the case was re-filed in Nayarit. Yet, the only discovery to have proceeded thus far is basic discovery necessary to elucidate the issues on Defendants' FNC motion to dismiss. Plaintiffs' attempts to conduct unfettered discovery were rejected by this Court in prior orders.

> **v. This Court's Finding that Nayarit, Mexico is Not an "Adequate" Alternative Forum in This Case Because The United States in Strongly Connected to This Case is in Direct Conflict With The Record And This Issue Involves a Controlling Question of Law as to Which There is Substantial Ground For Difference of Opinion.**

It is irrelevant to the FNC analysis whether this case has connections to the United States as a whole. (See R&R, pp. 15-16). The relevant issue is a weighing of the factors to determine the respective convenience of litigating this case in Texas (not the U.S. as a whole) or in the alternate forum of Nayarit, Mexico. It was error for this Court to consider connections to the U.S. as a whole rather than focus on any connection with Texas.

In short, this Court found that Defendants advertise, conduct business, and solicit business in Texas, thus a *forum non conveniens* dismissal is not appropriate. *Id.* However, neither Plaintiffs nor this Court provided any legal support that these "contacts" are relevant to the issue of *forum non conveniens.* While such alleged facts might be relevant to the issue of personal jurisdiction, that issue is not before this Court.

> **c. Private Interests Weigh in Favor of Dismissal And This Court's Finding that There is No Need For a Viewing of The Subject Premises Involves a Controlling Question of Law as to Which There is Substantial Ground For Difference of Opinion.**

This Court found that the only private interest factor that weighed against dismissal was the need for a viewing of the subject premises. (See R&R, pp. 17-20). However, the law – as cited by Defendants – supports the need for a viewing of the premises in this case. *See* Defendants' FNC Motion, pp. 17-18; see also Defendants' FNC Reply Brief, pp. 25-26. This Court cites to no law to the contrary, and provides no basis why the law cited by Defendants should not be followed in this case.

> **d. Public Interests Weigh in Favor of Dismissal And This Court's Failure to Individually Analyze These Factors Involves a Controlling Question of Law as to Which There is Substantial Ground For Difference of Opinion.**

This Court failed to follow Fifth Circuit precedent by not individually analyzing the public interest factors. The Fifth Circuit is "insistent that the trial court carefully state in detail why the motion to dismiss on forum non conveniens is granted or denied." *Gonzalez,* 832 F.2d at 881. Under the law, there are four public interest factors that a court must consider: 1) administrative difficulties that follow for courts when litigation is piled up in congested centers instead of being handled at its origin; 2) jury duty which is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation; 3) the local interests and having localized controversies decided at home; and 4) the appropriateness of having the trial of

a diversity case in a forum that is at home with the state law that must govern the case, rather than having it put in some other forum to untangle problems and conflict of law and in law foreign to itself. *Gulf Oil*, 330 U.S. at 508-509. This Court merely stated that these factors were considered and that they weighed in favor of resolving this case in Texas. (See R&R, p. 20-21). This Court's failure to state its findings relative to these four factors is contrary to Fifth Circuit precedent.

## IV.    THE ORDER APPLYING TEXAS LAW TO LIABILITY AND DAMAGES PURSUANT TO RULE 44.1 MUST BE CERTIFIED FOR IMMEDIATE APPEAL.

It is indisputable that the choice of law analysis is inextricably linked to the *forum non conveniens* analysis given the fact that the governing law is one of the four public interest factors to be considered. The Fifth Circuit has repeatedly noted that the FNC and choice of law analyses are linked, due to the fact that the law that governs the case is a factor to be considered in the FNC analysis. *See McClelland*, 784 F.2d at 1317; see also *Gonzalez*, 832 F.2d at 879.

Other federal courts have also long recognized the importance of certifying choice of law determinations for immediate appeal pursuant to 28 U.S.C. § 1292(b). See *Schalliol v. Fare*, 206 F.Supp.2d 689 (E.D. Penn. 2002); see also *Burt v. Danforth*, 742 F.Supp. 1043 (E.D. Mo. 1990) (certifying the choice of law issue because a different resolution of the issue could obviate the need for a trial or, if the issue were decided differently on a post-trial appeal, necessitate a new trial). In *Schalliol*, several plaintiffs brought claims against several defendants arising out of a fatal airplane crash that occurred in Kentucky, with alleged negligence occurring in several other states. *Id.* After conducting the choice of law analysis, the court concluded that Indiana law governed the Federal Tort Claims Act causes of action against the United States. However, the court certified its finding for immediate appeal pursuant to 28 U.S.C. § 1292(b). *Id.* at 701. The

court noted that its choice of law determination "is a controlling question of law in that reversal of this decision by the Court of Appeals could result in the application of different jurisdiction's substantive law on the primary issues of liability and/or damages." *Id.* The court further noted that "an immediate appeal may materially advance the ultimate termination of the litigation by providing the parties with certainty as to the scope of possible financial exposure if the case were to proceed to trial, which differs greatly depending on whether Indiana or Pennsylvania law is applied." *Id.*

Similarly, in the instant case, this Court's Rule 44.1 choice of law determination involves a controlling question of law in that reversal of this decision by the Fifth Circuit could result in the application of different jurisdiction's substantive law (namely Nayarit, Mexico) on the primary issues of liability and/or damages.  Further, an immediate appeal may materially advance the ultimate termination of the litigation by providing the parties with certainty as to the scope of possible financial exposure if the case were to proceed to trial, which differs depending on whether the law of Nayarit, Mexico or Texas is applied.  A different resolution of the issue by the Fifth Circuit could obviate the need for a trial altogether.  Moreover, if the issue were decided differently <u>on a post-trial appeal</u>, this entire case would have to be re-litigated – including re-deposing witnesses because the underlying substantive law would be different – and the case would have to be go to trial all over again.

Based on the foregoing, the Fifth Circuit – and other federal courts – recognizes the importance of accepting an interlocutory appeal of a trial court's order on a choice of law motion.  This is so because of the involvement of controlling questions of law as to which there are substantial ground for difference of opinion.  Further, an immediate appeal from the order

may materially advance the ultimate termination of the litigation.  Defendants discuss, in turn

below, the individual issues for which there are substantial ground for difference of opinion.

> **a.  The Four Factual Contacts Under The Restatement Weigh in Favor of Applying The Law of Nayarit.**
>
> > **i.  This Court's Finding That Mexico is Not The Place of The Conduct That Allegedly Caused The Injury is in Direct Conflict With The Record And This Issue Involves a Controlling Question of Law as to Which There is Substantial Ground For Difference of Opinion.**

This Court found that "Plaintiffs persuasively argue Canada is where the medical

emergency policies and procedures governing the resort were created, maintained, and

accepted."  (See R&R, p. 28).   The problem with this finding, however, is that the facts

uncovered during the depositions taken in this case do not support this finding.  It is plainly

improper to base a finding of fact on argument of counsel when that argument is: 1) not

supported by evidence; and 2) actually contradicted by evidence.   Arguments of Plaintiffs'

counsel cannot change or overcome the evidentiary facts of record.

The hotel general manager, Christian Clerc, testified that the hotel has a contract with a

local medical services provider, Servicios Medicos de la Bahia, to provide physicians at the hotel

24-hours a day.   See pp. 83-84 of Exhibit B to Defendants' Rule 44.1 Reply Brief.   Once the

medical doctor gets involved in treating a hotel guest, only he or she has the authority to direct

the treatment, including how and when to transport a guest to a medical facility.  *Id.*  at 54.   As

the most senior member of management at the subject hotel, Mr. Clerc reports to the Mexican

owners/asset managers of the hotel.   He does <u>not</u> report to Four Season in Canada.  *Id.* at 78-80.

Four Seasons in Canada has never requested to review the hotel's "Code Blue" policies and

procedures.  *Id.* at 87.

The hotel manager, Martin Rhomberg, testified that he relies on the contract doctors to determine what services are appropriate and what equipment should be kept at the hotel.  See pp. 66-67 of Exhibit C to Defendants' Rule 44.1 Reply Brief.  Senior Vice President of Operations and Development for Four Seasons Hotels Ltd., Charles Ferraro, testified that, on the specific issue of medical services for guests, Four Seasons Hotels Ltd., specifically advised the subject hotel that guest medical services would have to be dealt with locally because of the location of the property.  See pp. 37-41 of Exhibit D to Defendants' Rule 44.1 Reply Brief.  According to Ferraro, the local Mexican ownership group was ultimately responsible for coming up with a medical services plan because they would best understand whether the plan was adequate given their knowledge of Mexican law, customs and tradition. *Id.* at 37-41, and 68.

The testimony by Messrs. Ferraro, Clerc, and Rhomberg is uncontradicted.  Plaintiffs cannot overcome the evidence that the Canadian Defendant did <u>not</u> draft, review or enforce the hotel's procedures relating to medical treatment of guests.  Plaintiffs cannot persuasively argue that Four Seasons Hotels Ltd., committed the alleged tortious acts or omissions that caused Richard Sacks' death or that those actions transpired in Canada.  Finally, there is simply no <u>evidence</u> that any of these policies or procedures were made in the United States, as suggested by Plaintiffs and in the R&R.

### ii.   The Domicile, Residence, Nationality, Place of Incorporation, And Place of Business of The Parties Does Not Favor Texas And This Issue Involves a Controlling Question of Law as to Which There is Substantial Ground For Difference of Opinion.

Defendants argued that this factor was neutral, favoring neither Nayarit nor Texas, because the parties are located in several different countries and states.  However, this Court agreed with Plaintiffs that this factor favors Texas because Defendants "both conduct business in Texas." (See R&R, p. 28-29).  While the discussed advertisement and marketing contacts may

be relevant to a personal jurisdiction analysis, neither Plaintiffs nor this Court cited to any legal authority suggesting that such conduct is even relevant under this Restatement factor. This factor does not require the court to conduct a full personal jurisdictional-type analysis of where the parties are "doing or transacting business." Rather, this factor, as applied in all the case law cited in both Plaintiffs' and Defendants' briefs, is a plain and simple balancing of where the parties are located – namely each parties' place of incorporation and principal place of business.

### iii.   The Relationship Between The Parties is Not Centered in Texas.

In finding that the relationship was centered in Texas, this Court essentially found that the instant case is analogous to *Trailways, Inc. v. Clark,* 794 S.W.2d 479 (Tex. App. – Corpus Christi 1990, *writ denied*) on the issue of where the relationship between the parties is centered. See pp. 29-31. However, the *Trailways* case is distinguishable relative to this particular factor. In *Trailways*, the decedents died in a bus crash in Mexico; however, they had purchased their tickets and boarded the bus in Texas. 794 S.W.2d at 485-486. Citing these facts, the court found that the relationship between the parties was centered in Texas. *Id.*

Plaintiffs in our case did not buy anything from Defendants in Texas. Plaintiffs did not pay for their hotel stay in Texas. Defendants did not accept any money from Plaintiffs in Texas. Defendants did not provide any services to Plaintiffs in Texas. Richard and Holly Sacks directly paid for their stay and all the services relating to their trip at the hotel property in Nayarit. *See Invoice at Exhibit E* to Defendants Rule 44.1 Reply Brief. Plaintiffs assert that they made their reservation to stay at the subject hotel by telephone from Texas. However, Plaintiffs have not submitted any evidentiary support for this claim. Absent any citation to the record to support this assertion, it should bear no weight in this Court's analysis.

Furthermore, Plaintiffs relationship with the subject hotel was contractual in nature and did not commence until the Mr. and Mrs. Sacks presented themselves for check in at the subject hotel in Mexico. It was then that they signed the guest registration card, agreeing to be bound by all the terms and conditions contained therein relative to their stay, thereby creating the contractual relationship. See Guest Registration Card attached as Exhibit A to Defendants' objections. Therefore, this factor would still not weigh in favor of Texas even if Plaintiffs did book their reservation from Texas.

> **b. The Seven Restatement Factors Weigh in Favor of Applying The Law of Nayarit, Mexico.**
>
> > **i. The needs of international systems apply to this case because the Defendants are domiciled in Mexico and Canada And This Issue Involves a Controlling Question of Law as to Which There is Substantial Ground For Difference of Opinion.**

This Court found that Mexico has an interest in regulating businesses operating within its borders, but this Court was not convinced that the choice of law decision would have a substantial effect on commercial activity between Texas and Mexico. (See R&R, p. 32). This Court's reliance on *Baird* is misplaced. The plaintiff and third-party defendant in *Baird* were Canadian. The defendant was a Texas corporation. 491 F.Supp. 1144. Weighing this factor in its determination of whether to apply Texas or Canadian law, the court found the evidence to be "inconclusive." *Id.* In the context of that case, such a finding is understandable because the law of one of the Defendants' domiciles would govern their conduct. However, in the instant case, neither Defendant is domiciled in Texas – they are domiciled in Mexico and Canada. Yet, Plaintiffs seek to impose Texas tort law against these foreign companies. For this reason, the needs of international systems are quite different in the instant case when compared to *Baird* and do not favor Texas law but clearly favor application of the law of Nayarit, Mexico.

ii. **The Relevant Policies of The Forum Favor Application of The Law of Nayarit, Mexico And This Issue Involves a Controlling Question of Law as to Which There is Substantial Ground For Difference of Opinion.**

In the instant case, there are <u>no</u> negligent acts or omissions that are alleged to have taken place in Texas.   Further, Plaintiffs' and this Court's discussion of personal jurisdiction-type contacts, such as advertising in Texas and the fact that there are hotels located in Texas bearing the Four Seasons name, is not controlling.   They cite no case that has ever reached the conclusion that a Mexican resort advertising in Texas is an activity that raises Texas policies over Mexican policies.   This alleged unrelated general business activity in Texas has absolutely no causal connection to the injuries in this case.   The fact that there are advertisements in Texas for Four Seasons' resorts has no relevance to the choice of law analysis and is not probative of whether Texas policies favor application of Texas law in this case.

This Court also found that Texas has a superior interest in protecting its citizens.   Every plaintiff's home state will always have an interest in protecting its citizens.   As a result, this universal interest is not determinative – and not heavily weighed – in the "most significant relationship" analysis.   The Seventh Circuit accurately reached the assessment that a U.S. citizen voluntarily traveling to a foreign country <u>cannot</u> justifiably expect to carry her domiciliary law with her to every foreign country she visited.   *Spinozzi v. ITT Sheraton Corp.,* 174 F.3d 842, 846 (7th Cir. 1999).

If the hotel were located in Texas, the state would certainly have a justifiable interest in controlling the conduct at the hotel.   However, the subject hotel is located in Nayarit, Mexico – not Texas.   Texas citizens stay at hotels throughout the other 49 states as well as around the world.   Taking these findings to their final conclusion, Texas would have an interest in

controlling conduct at nearly every hotel worldwide through the application of Texas law.  This position is not supported by Texas law.

> ### iii. The Relevant Policies of Other Interested States And The Relative Interests of Those States in The Determination of The Particular Issue Also Favor Application of The Law of Nayarit, Mexico, in This Case And This Issue Involves a Controlling Question of Law as to Which There is Substantial Ground For Difference of Opinion.

Mexico has an interest in protecting not only its domiciliary Defendant but also those individuals and companies acting within its borders.  The Court's finding that this factor does not favor Nayarit, Mexico relies on the Plaintiffs' simple allegation that the allegedly tortious conduct occurred in Canada, not Mexico.  As discussed in greater detail above, any alleged tortious behavior occurred only in Mexico.  Further, Mexico does have an interest over the Canadian Defendant, Four Seasons Hotels Ltd., relative to this case.  Four Seasons Hotels Ltd., is named as a Defendant in this case arising out of the death of Richard Sacks at the subject hotel in Mexico.  For the simple reason that Plaintiffs seek to hold Four Seasons Hotels Ltd., liable for acts/omissions at the subject hotel, Mexico certainly has an interest.

> ### iv. The Protection of Justified Expectations Applies to This Case And Weighs in Favor of Nayarit, Mexico And This Issue Involves a Controlling Question of Law as to Which There is Substantial Ground For Difference of Opinion.

A hotel-resort's facilities and conduct must comply with local building codes, local life-safety codes, and other local rules and regulations or it could be shut down by the local, state, or federal government for failure to comply with applicable laws and regulations.  Certainly, hotel-resorts located in Texas act so as to comply with applicable rules, regulations, and law of Texas.  There is no support to suggest the corporate Defendants in the instant case did not act so as to comply with the respective laws of their domiciles.

Further, Defendants' reliance on *Spinozzi v. ITT Sheraton Corp.,* 174 F.3d 842 (7th Cir. 1999) relative to this issue is far from misplaced. The conclusion reached by the *Spinozzi* court was not determined by the percentage of guests from Illinois visiting the hotel in Mexico. In *Spinozzi,* the Seventh Circuit reasoned that a U.S. citizen voluntarily traveling to a foreign country cannot justifiably expect to carry her domiciliary law with her to every foreign country she visited. 174 F.3d at 846.

> **v. The basic policies underlying the particular field of law favor application of the law of Nayarit, Mexico And This Issue Involves a Controlling Question of Law as to Which There is Substantial Ground For Difference of Opinion.**

This Court stated that "Texas law should govern the damages issue because the decedent was a Texas citizen." (See R&R, p. 35-36). However, there is no citation to any legal authority in support of this conclusion. If this were the law, there would be no need for any conflicts of law analysis on damage claims. Texas citizenship would settle the issue. However, the multi-factor, "most significant relationship" analysis (which is the law of Texas) does not rely on the sole factor of plaintiff's citizenship. Instead, the "most significant relationship" analysis governs both damage and liability issues and encompasses numerous factors. Those factors, in this case, support the application of the law of Nayarit, Mexico to both liability and damages.

> **vi. Ease in the determination and application of the law to be applied favors Nayarit, Mexico And This Issue Involves a Controlling Question of Law as to Which There is Substantial Ground For Difference of Opinion.**

This Court found that Texas courts are capable of applying Texas law. Defendants agree. Yet, this finding ignores the Texas Supreme Court's holding on a choice of law question that Texas courts can also apply Mexican law with ease. The Texas Supreme Court in *Gutierrez,* 583

S.W.2d at 320-321, noted that there "is no reason to believe that Texas courts are any less capable in this regard [applying foreign law] than courts elsewhere." *Id.*

> **vii. Certainty, predictability and uniformity of result favors Nayarit And This Issue Involves a Controlling Question of Law as to Which There is Substantial Ground For Difference of Opinion.**

In the instant case, Plaintiffs have not named a Texas corporation as a Defendant. Plaintiffs have not even named a corporation with its principal place of business in Texas as a Defendant. To impose Texas law on the Mexican and Canadian Defendants in this case, for an incident that occurred at a hotel in Nayarit, Mexico, would not promote the important policies of certainty, predictability and uniformity of results. Further, the Seventh Circuit's well-reasoned discussion of certainty, predictability and uniformity of results in *Spinozzi v. ITT Sheraton Corp.,* 174 F.3d 842 (7th Cir. 1999) is directly on point in this case.

## V.   CONCLUSION.

For all the foregoing reasons, this Court should pursuant to 28 U.S.C. § 1292(b) certify the following issues for immediate appeal: 1) denial of Defendants' *forum non conveniens* motion to dismiss; 2) application of Texas law to liability pursuant to Rule 44.1; and 3) application of Texas law to damages pursuant to Rule 44.1.

Respectfully submitted,

**GODWIN PAPPAS LANGLEYRONQUILLO, LLP**

By:      /s/ JOSE L. GONZALEZ
   MARCOS G. RONQUILLO
   State Bar No. 17226000
   KIRK D. WILLIS
   State Bar No. 21648500
   JOSE L. GONZALEZ
   State Bar No. 08129100
   1201 Elm Street, Suite 1700
   Dallas, Texas 75270-2084
   (214) 939-4400 (Telephone)
   (214) 760-7332 (Telecopier)
   E-mail: mronquillo@godwingruber.com
   E-mail: kwillis@godwingruber.com
   E-mail: jgonzalez@godwinpappas.com

**CREMER, KOPON, SHAUGHNESSY & SPINA, L.L.C.**

   WILLIAM J. CREMER
   State Bar No. 6180833
   180 N. LaSalle, Suite 3300
   Chicago, Illinois 60601
   (312) 980-3014 (Telephone)
   (312) 726-3818 (Telecopier)
   E-mail: wcremer@cksslaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document was served on the following counsel of record via U.S. Mail and E-Mail this 3RD day of April, 2006:

Windle Turley
Law Offices of Windle Turley, P.C.
6440 North Central Expressway
1000 Turley Law Center
Dallas, Texas 75206

Winford L. Dunn
Dunn, Nutter & Morgan, L.L.P.
Suite Six, Stateline Plaza, Box 8030
Texarkana, Texas 71854

William Cremer
Cremer, Kopon, Shaughnessy & Spina LLC
180 North LaSalle, Suite 3300
Chicago, Illinois 60601

/s/ JOSE L. GONZALEZ
JOSE L. GONZALEZ