IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| **1. HOLLY ANN SACKS, Individually** | § | |
| **and as Representative of the Estate of** | § | |
| **RICHARD TODD SACKS, 2. MELVIN** | § | |
| **PHILLIP SACKS, and 3. MARILYN** | § | |
| **PROCTOR,** | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION** |
| | § | **NO. 5:04-CV-73** |
| **1. FOUR SEASONS HOTELS LIMITED** | § | |
| **and 2. FOUR SEASONS PUNTA MITA,** | § | |
| **S.A. de C.V.,** | § | |
| *Defendants.* | § | |

## DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTIONS FOR PROTECTIVE ORDER AND TO QUASH SUBPOENA

Defendants, FOUR SEASONS HOTELS LIMITED and FOUR SEASONS PUNTA MITA, S.A. de C.V. hereby respond to Plaintiffs Melvin Sacks and Marilyn Proctor's Motion for a Protective Order and Motion to Quash Subpoena. In support, Defendants state as follows:

### Background

On November 7, 2007, Defendants served a Notice of Intention to take the Deposition by Written Questions of Mission Investigations in order to obtain materials in their possession that relate to the death of Richard Sacks. (Ex. "A") This information is relevant to the cause of death of Richard Sacks. Defendants have obtained medical records through discovery that indicate that Plaintiff Melvin Sacks believed that Richard Sacks was "murdered in Mexico" (Ex. "B"). Plaintiffs also produced a letter to Defendants dated June 17, 2003 that Plaintiffs or their former counsel had previously

1

hired Mission Investigations to investigate the death of Richard Sacks in Mexico. (Ex. "C") This is one week after Sacks died in Mexico.

Defendants sent a Request for Production of Documents to Melvin Sacks and Marilyn Proctor, the parents of the deceased, requesting the Mission Investigation report (Exs. "D and E"). Their response to the Request for Production, dated September 28, 2007, was that they had no responsive documents, but they curiously asserted attorney-client and attorney work-product privileges. (Exs. "F and G"). On October 31, 2007, Winford Dunn, counsel for the parents, sent a letter representing that they had no responsive documents. (Ex. "H")

On November 7, 2007, Defendants served the Deposition on Written Questions, with subpoena, to Mission Investigations (Ex. "A"). The deposition was scheduled for November 21, 2007. Despite their previous denials that they did not have any responsive documents, Melvin Sacks and Marilyn Proctor responded by filing on November 15, 2007, the instant Motion to Quash and Motion for Protection asserting attorney-client and attorney work-product privilege over the production of Mission Investigation records. On November 15, 2007, they also filed a privilege log this time declaring that in fact a 5-page report prepared by Samuel Zamora of Mission Investigations did indeed exist. (Ex. "I") This statement is direct contradiction of their statement in the October 31st letter. Because Plaintiffs have not been forthcoming in producing the Mission Investigations report, Defendants ask that the court deny their motion to quash and for protection and order the deposition of written questions of Mission Investigations and the deposition of Samuel Zamora.

2

## Summary of Argument

The attorney-client privilege and the work-product doctrine are separate and distinct, and therefore must be analyzed separately. *Zenith Radio Corp. v. United States*, 764 F.2d 1577, 1580 (Fed. Cir. 1985). Federal Rule of Civil Procedure 26(b) governs the scope of discovery. *Papadakis v. CSX Transp., Inc.*, 233 F.R.D. 227, 228 (D.Mass. 2006). The substantive aspect of the attorney-client privilege is governed by state law, while the work-product doctrine is governed by federal law. *Hickman v. Taylor*, 329 U.S. 495 (1947); *see United Coal Cos. v. Powell Const. Co.*, 839 F.2d 958, 965-66 (3d Cir. 1988). Plaintiffs' citations to Texas Rules and cases in their Motion for a Protective Order, while possibly stating correct substantive federal law, should not be considered by this Court.

The attorney-client privilege and work-product doctrine are not to be used as offensive weapons. *See, e.g., Lugosch v. Congel*, 219 F.R.D. 220, 235 (N.D.N.Y. 2003). "The federal rules promote broad discovery so that all relevant evidence is disclosed as early as possible, making a trial 'less a game of blind man's b[l]uff and more a fair contest', *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 682…(1958), where each party can knowledgeably evaluate the strength of its evidence and chances of ultimate success." *Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 517 (5th Cir. 1993).

Plaintiffs are attempting to use offensively the attorney-client and attorney work-product privileges to sustain their cause of action and to prevent Defendants from discovering information relevant to their defense of Plaintiffs' claim for the wrongful death of Richard Sacks. Under the offensive use doctrine, a party may waive a privilege when the privilege is used as a sword rather than a shield. *Austin v. Becton, Dickinson &*

*Co., Inc.*, No. 2:06-CV-357, 2007 WL 2077156 at *5 (E.D. Tex. July 18, 2007), *citing*

*Republic Ins. Co. v. Davis*, 856 S.W.2d 158, 163 (Tex. 1993). Such waiver is found

when (1) the party asserting the privilege seeks affirmative relief, (2) the privileged

information sought must be such that, if believed by the fact finder, in all probability it

would be outcome determinative of the cause of action asserted (or go to the very heart of

the affirmative relief sought), and (3) disclosure of the confidential communication must

be the only means by which the aggrieved party may obtain the evidence. *Republic*, 856

S.W.2d at 163. The interviews and information and any report obtained by Mission

Investigations are relevant to Plaintiffs' claims and Defendants' defenses, and Defendants

cannot obtain the information because the investigation cannot be duplicated. See

Section II, *infra*. Plaintiffs have therefore waived any claims of privilege or protection.

## I.     Attorney-Client Privilege

The attorney-client privilege does not apply in this instance.

### A.     Plaintiffs have not met their burden in claiming attorney-client privilege

The attorney-client privilege is to be narrowly construed, withholding relevant

information from the finder of fact only when necessary to achieve its purpose. *Lugosch

v. Congel*, 219 F.R.D. 220, 235 (N.D.N.Y. 2003) (warning against the offensive use of

the privilege). The party asserting the attorney-client privilege has the burden of proving

that the privilege applies to a given document or communication. *See, e.g., In re Grand

Jury Investigation v. Corporation*, 974 F.3d 1068, 1070 (9th Cir. 1992); *United States v.

Const. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996) ("The party asserting the

privilege must establish the essential elements of the privilege."); *Alexander v. FBI*, 192

F.R.D. 12, 16 (D.D.C. 2000) (parties claiming privilege "have not proven (or even

4

specifically alleged), by *in camera* affidavit or otherwise, that the specific actions inquired about" were taken at the direction of counsel; parties did not provide "a factual basis on which this court could find that such [confidential] communications occurred.").

Plaintiffs in this case have put forth no factual basis for withholding the materials in their possession or the materials in the possession of Mission Investigations. Plaintiffs have not provided any information other than that counsel requested the services of the investigator. They have not provided a sufficiently detailed privilege log that states how and why the information is protected. See Section III, *infra*.

**B.    Third party communications with an investigator are not privileged**

Even if Plaintiffs had put forth some evidence, any information obtained by the investigator from third parties is not subject to attorney-client privilege. "However, statements made by third parties either to the attorney or to his private investigator do not come within the attorney-client privilege." *Clark v. City of Munster*, 115 F.R.D. 609, 613 (N.D. Ind. 1987) (citation omitted) (holding that only communication between plaintiff and investigator was privileged, but defendants made no showing of need for work-product); *accord 1100 West, LLC v. Red Spot Paint & Varnish Co., Inc.*, No. 1:05-cv-1670-LJM-WTL, 2007 WL 2904073 at *2 (S.D. Ind. May 18, 2007). "[T]he attorney-client privilege focuses on the protection of confidential communications from the client, not all discussions among a group of people whom courts held may be entitled to claim the privilege." *Alexander v. FBI*, 192 F.R.D. 12, 17 (D.D.C. 2000). If Mission Investigations interviewed third party witnesses in Mexico, such interviews would not be protected by the attorney-client privilege. Again, if such interviews or summaries of

interviews are contained in the report at issue or the other materials maintained by Mission Investigations, they are not privileged.

## II.    Work-Product Doctrine

"Ordinarily, the work-product doctrine should only be applied after it is decided that the attorney-client privilege does not apply." *Reedhycalog UK, Ltd. v. Baker Hughes Oilfield Operations, Inc.*, 242 F.R.D. 357, 360 n.1 (E.D. Tex. 2007). "To invoke a work-product privilege, a party must generally show that the documents were prepared principally or exclusively to assist in anticipated or ongoing litigation." *United States v. Const. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996) (citations omitted); *see United States v. Nobles*, 422 U.S. 225 (1975) (holding that the work-product doctrine in *Hickman v. Taylor* necessarily applies to documents prepared by an attorney's agent). This doctrine was codified as Federal Rule of Civil Procedure 26(b)(3) and provides a form of qualified immunity for materials within its scope. *See, e.g., Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 514 n.2 (5th Cir. 1993). Intangible attorney work-product must be analyzed under *Hickman v. Taylor*, 329 U.S. 495 (1947) and subsequent case law. *Alexander v. FBI*, 192 F.R.D. 12, 17 (D.D.C. 2000).

The burden of demonstrating the applicability of the work-product doctrine is on the party seeking its protection. *See, e.g., SEC v. Beacon Hill Asset Mgmt. LLC*, 231 F.R.D. 134, 139 (S.D.N.Y. 2004); *O'Connor v. Boeing N. American, Inc.*, 216 F.R.D. 640, 642 (C.D. Cal. 2003); *Alexander v. FBI*, 192 F.R.D. at 19. Plaintiffs have offered no evidence that the doctrine applies.

"Instead of explaining to the court *how* answering the questions asked…would reveal [mental impressions, personal beliefs, and litigation strategies, the party] simply

claims that it "clearly" would. *Alexander v. FBI*, 192 F.R.D. at 18 (emphasis in original). Plaintiffs in this case have offered no explanation whatsoever how production of the materials at issue would reveal any protected information. Defendants have a substantial need for the requested information and cannot obtain substantially equivalent information, FED. R. CIV. P. 26(b)(3), because they do not know any details about the investigative report or the other materials maintained by Mission Investigations. Without, at minimum, an *in camera* review of the materials, Plaintiffs cannot make the showing that they are entitled to make under Rule 26(b)(3).    Whether Mission Investigations spoke to witnesses or conducted surveillance is discoverable, and is currently unknown to Defendants.    For example, video surveillance tapes must be provided in discovery prior to trial even if they are work-product. *Papadakis v. CSX Transp., Inc.*, 233 F.R.D. 227, 228 (D.Mass. 2006).

Certain other information, such as whether investigators have talked to certain individuals, is not protected by the work-product doctrine because it does not reveal the mental processes of the attorneys. *Alexander v. FBI*, 192 F.R.D. at 19 (ordering list of interviewees to be disclosed and recognizing that information beyond names *may* be protected if party proves it reveals mental processes).    The production of a mere list of persons interviewed requires a comparatively low showing of need.    *In re Grand Jury (Hughes)*, 633 F.2d 282, 289 (3d Cir. 1979), *citing United States v. Amerada Hess Corp.*, 619 F.2d 980 (3d Cir. 1980).

Statements from witnesses, especially when taken much nearer to the time of an incident than at present, are "unique catalysts in the search for truth." *Smith v. Diamond Offshore Drilling, Inc.*, 168 F.R.D. 582, 584 (S.D. Tex. 1996), *quoting Southern Ry. Co.*

*v. Lanham*, 403 F.2d 119 (5th Cir. 1968); *Brawner v. Allstate Indemnity Co.*, No. 4:07-CV-00482 GTE, 2007 WL 3229169 at *3 (E.D. Ark. Oct. 29, 2007) (holding that witness statement summaries are not protected work-product). Here Mission Investigations was hired one week after Richard Sacks died which is certainly near the time of the incident. Further, in his deposition taken October 11, 2007, Melvin Sacks has given contradictory testimony about the statements contained in his medical records about his belief that Richard Sacks was murdered. The substantial need of the discovering party has to do with its right to discover the evidence that exists within the other party's possession that is relevant to Plaintiffs' claims of wrongful death. Any information obtained by Mission Investigations cannot be duplicated by Defendants. It is necessary for Defendants to have access to the investigative report. *Frazier v. Southeastern Pa. Transp. Auth.*, 161 F.R.D. 309, 318 (E.D. Pa. 1995) (finding opinion work product relevant to the plaintiff's §1983 action was discoverable).

The *Smith* court equated the good cause test from *Lanham* to the Rule 26 substantial need and undue hardship test and ordered production of witness statements. *Smith*, 168 F.R.D. at 584-85 (finding recorded statements will be more accurate than statements taken at the present). Again, even summaries of witness statements are not protected. *Brawner*, 2007 WL 3229169 at *3. The *Smith* court did not find that there were compelling and extraordinary circumstances to warrant disclosure of investigative reports that were opinion work product. 168 F.R.D. at 585. However, Plaintiffs in this case have not demonstrated that Mission Investigations' report and their other materials contain mental impressions, theories, or opinions of counsel, and cannot do so without an *in camera* inspection.

8

Work-product protection only encompasses documents and tangible things. FED. R. CIV. P. 26(b)(3). The observations of investigators and relevant information regarding the mechanics of investigation are fair game for inquiry at deposition. *Fisher v. Nat'l R.R. Passenger Corp.*, 152 F.R.D. 145, 156 (N.D. Ind. 1993) (recognizing that discovery of mere facts is not prohibited), *citing Dunn v. State Farm Fire & Cas. Co.*, 122 F.R.D. 507, 510 (N.D. Miss. 1988). In this request, Defendants will need to depose Samuel Zamora, the Mission investigator. In this case, materials requested by the Defendants may lead to admissible substantive and impeachment evidence, and any information regarding the manner in which Mission Investigations performed its investigations and the results of that investigation are discoverable.

Substantive evidence is that which is offered to establish the truth of a matter to be determined by a trier of fact, including evidence which would tend to prove or disprove claims. *Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 514 n.2 (5th Cir. 1993) (holding that videotape had at least some substantive value) (citations omitted). Impeachment evidence is that which is offered to discredit a witness to reduce the effectiveness of testimony by bringing forth evidence that explains why the jury should not put faith in the testimony. *Id.* In the instant case, Plaintiffs allege that Defendants did not respond properly to the decedent's medical emergency and failed to have proper policies and procedures in place, proximately causing Richard Sacks' death. Much of Plaintiffs' claim rests on the testimony of Holly Ann Sacks. Any measurements, diagrams, witness interviews, etc. could reasonably be viewed either to uphold her claims or to discredit her testimony. *See, e.g., Frazier*, 161 F.R.D. at 318 (finding surveillance

reports and redacted invoices discoverable where surveillance used to buttress the plaintiff's case-in-chief).

## III.    Privilege Log

The privilege log of Plaintiffs Melvin Sacks and Marilyn Proctor is deficient. (See Exhibit I.)  Defendants and the Court are unable to determine from the description whether the investigative report is in fact privileged or protected.  Further, it is safe to assume that Mission Investigations has additional backup materials on this investigation.

A proper privilege log, together with any affidavits, identifies (a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared, or dated.  *In re Grand Jury Investigation v. Corporation*, 974 F.3d 1068, 1071 (9th Cir. 1992), *citing Dole v. Milonas*, 889 F.2d 885 (9th Cir. 1989). Plaintiffs' privilege log is deficient in these respects because they have not identified who has received, sent, been furnished a copy, or informed of the substance of the report, or the relevant dates of the investigation and document.

Adequate privilege logs "will identify each document and the individuals who were parties to the communications, providing sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure. Other required information, such as the relationship between the individuals listed in the log and the litigating parties, the maintenance of confidentiality and the reasons for any disclosures of the document to individuals not normally within the privileged relationship, is then typically supplied by affidavit or deposition testimony." *United States v. Const. Prods.*

10

*Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996), *quoting Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 471 (S.D.N.Y. 1993) (citations omitted).    In *Construction Products Research, Inc.*, the privilege log included the date, author, recipient, comments, and cursory description of each document.   73 F.3d at 474.   The court found that the log did not provide enough information to support a claim of privilege and was therefore deficient.  *Id.* at 474.  The log of Plaintiffs Melvin Sacks and Marilyn Proctor does not provide even this basic level of information.

## IV.    *In Camera* **Review**

Defendants request that this Court deny Plaintiffs' motions in full and order both Plaintiffs counsel and Mission Investigations to produce the requested documents and to compel the deposition of Samuel Zamora, the Mission investigator.    Defendants alternatively request an *in camera* review of all Mission Investigations' materials and all materials in Plaintiffs' possession.  "The law does not clearly specify what type of showing should be made by the opposing party to justify *in camera* review of the documents once the party asserting privilege has made a threshold showing sufficient to satisfy the court."  *In re Grand Jury Investigation v. Corporation*, 974 F.3d 1068, 1073-74 (9th Cir. 1992).

First, "the party opposing the privilege need only show a factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged."  *In re Grand Jury Investigation v. Corporation*, 974 F.3d 1068, 1075 (9th Cir. 1992) (citing the "low threshold" requirement of *Zolin* to prevent abuse of the attorney-client privilege); *accord Zolin*, 491 U.S. at 572.  Second, if such a showing is made, the district court has discretion to

conduct an *in camera* review, *In re Grand Jury Investigation v. Corporation*, 974 F.3d 1068, 1073 (9th Cir. 1992), guided by the factors in *Zolin*, namely the amount of material to be reviewed, the relevance of the alleged privileged material to the case, and the likelihood that review will reveal evidence that the material is not privileged. *Zolin*, 491 U.S. at 572.

Defendants believe that review of Mission Investigations report would not unduly burden the Court and counsel, and the allegedly privileged material bears on Plaintiffs' ability to prove their case and Defendants' ability to defend themselves against the claim for wrongful death. Further, this material could be vital to determining what actually happened to Richard Sacks—this is unquestionably necessary to Defendants' defenses. In light of Plaintiffs' sudden claim of privilege of a document whose existence they denied, Defendants believe that the *Zolin* factors favor *in camera* inspection of all Mission materials and materials from Plaintiffs. Defendants have a good faith belief that inspection will reveal unprotected information, and an *in camera* inspection is the easiest and most efficient way to confirm this belief.

WHEREFORE, the Defendants, FOUR SEASONS HOTELS LIMITED and FOUR SEASONS PUNTA MITA, S.A. de C.V., request that this Court deny Plaintiffs' motion for a protective order and motion to quash subpoena, and order that Plaintiffs and Mission Investigations must independently and individually comply with the subpoena and requests for production. In the alternative, Defendants request that the Court conduct an in camera review of the materials in question in order to determine the applicability of any privilege or immunity. Defendants further request that the court compel the deposition of Samuel Zamora.

12

**Respectfully submitted,**

By:      /s/ Jose L. Gonzalez

MARCOS G. RONQUILLO (*attorney in charge*)
State Bar No. 17226000
JOSE L. GONZALEZ
State Bar No. 08129100

1201 Elm Street, Suite 1700
Dallas, Texas 75270-2084
(214) 939-4400 (Telephone)
(214) 760-7332 (Telecopier)
E-mail: mronquillo@godwingruber.com
E-mail: jgonzalez@godwingruber.com

**CREMER, KOPON, SHAUGHNESSY &
SPINA, LLC**

WILLIAM J. CREMER
Illinois State Bar No. 6180833
180 N. LaSalle, Suite 3300
Chicago, Illinois 60601
(312) 980-3014 (Telephone)
(312) 726-3818 (Telecopier)
E-mail: wcremer@cksslaw.com

13

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Defendants' Response to Plaintiffs' Motions for Protective Order and to Quash Subpoena has been served on the following counsel of record via the Court's ECF system on this the 30th day of November, 2007.

Windle Turley
Law Offices of Windle  Turley, P.C.
6440 North Central Expressway
1000 Turley Law Center
Dallas, Texas 75206

Winford L. Dunn
Dunn, Nutter & Morgan, L.L.P.
Suite Six, Stateline Plaza, Box 8030
Texarkana, Texas 71854

William Cremer
Cremer, Kopon, Shaughnessy
180 North LaSalle, Suite 3300
Chicago, Illinois 60601

/S/ Jose L. Gonzalez
Jose L. Gonzalez