IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| HOLLY ANN SACKS, Individually and and as Representative of the Estate of RICHARD TODD SACKS, MELVIN PHILLIP SACKS, and MARILYN PROCTOR, | § § § § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. 5-04-073 JURY |
| VS. | § § | |
| FOUR SEASONS HOTELS LIMITED and FOUR SEASONS PUNTA MITA, S.A. de C.V., | § § § § | |
| Defendants. | § § | |

**EMERGENCY- DEFENDANT FOUR SEASONS HOTEL LIMITED AND DEFENDANT FOUR SEASONS PUNTA MITA, S.A. DE C.V.'S MOTION FOR NEW SCHEDULING ORDER AND TRIAL DATE AND MOTION FOR SANCTIONS**

Defendants, FOUR SEASONS HOTELS LIMITED and FOUR SEASONS PUNTA MITA, S.A. de C.V., submit their Motion for New Scheduling Order and Trial Date and Motion for Sanctions.  In support, Defendants state as follows:

**STATEMENT OF ISSUES**

1.      Do Plaintiffs' actions causing the late disclosure of the Missions Investigations report, and failure to disclose witnesses listed therein, which details an illegal drug purchase by Holly Sacks and Richard Sacks, warrant dismissal with prejudice of Plaintiffs' complaint and/or other sanctions, including costs?

**I.      BACKGROUND**

1.      This Court recently issued an order denying Melvin Sacks' and Marilyn Proctor's motions for a protective order and to quash a subpoena concerning the Mission Investigations report. This report brings new evidence, including previously undisclosed witnesses and information, to light.

Most significantly, it shows that Richard Sacks and Holly Sacks purchased the illegal drug ecstasy from a known drug dealer on a street corner in Mexico the night before Richard Sacks died.  (Ex. "A").  The sworn deposition testimony of all three Plaintiffs denies knowledge of this, and the willful actions of Plaintiffs and their counsel have hidden this critical fact from Defendants for years.

2.       Plaintiffs, when jointly represented by attorney John David Hart on August 2, 2004, did not initially disclose pursuant to Rule 26(a)(1):  a report by Mission Investigations; the author of the report, Samuel Zamora; nor any of the witnesses named in the report.  (Ex."B").

3.       Plaintiff Holly Sacks, as Representative of the Estate of Richard Sacks, stated on November 5, 2004 in response to Defendants' Request for Production number 37, subject to objection, that documents prepared by an investigator concerning Richard Sacks' death were privileged, but no privilege log was ever produced.  (Ex. "C").

4.       Plaintiff Holly Sacks, individually, stated on November 5, 2004 in response to Defendants' Request for Production number 26, subject to objection, that documents prepared by an investigator concerning Richard Sacks' death were privileged, but no privilege log was ever produced. (Ex. "D").

5.       Plaintiff Holly Sacks, as Representative of the Estate of Richard Sacks, stated on November 5, 2004 in response to Defendants' Interrogatory number 5, subject to objection, that Richard Sacks consumed the drugs Lipitor and marijuana.  (Ex. "E").  This response was never amended or supplemented to include ecstasy.

6.       Plaintiff Holly Sacks, individually, provided a narrative that included her activities from June 6, 2003 through June 8, 2003 in response to Interrogatory number 3 of Defendants' First Set of Interrogatories dated November 5, 2004. (Ex. "F").  The narrative, however, did not include all of her activities as revealed in the Mission Investigations report, which in turn substantially contradicts the narrative.  (Exs. "A" and "F").

2

7.      After the withdrawal by attorney John David Hart and representation by counsel Winford Dunn and Windle Turley, Plaintiffs still did not disclose the report, the name of the investigator, or the witnesses named in the report in later Rule 26 disclosures dated September 21, 2007 and October 1, 2007.  (Exs. "P" and "Q").

8.      Later, Plaintiff Holly Ann Sacks responded to a request for production on September 25, 2007 that, subject to objection, she had no correspondence regarding the initiation of an investigation by Mission Investigations or any report by Mission Investigations.  (Ex. "R").  She has <u>never</u> produced a privilege log.  Likewise, Plaintiffs Melvin Sacks and Marilyn Proctor responded that they had no such correspondence or report on September 28, 2007.  (Ex. "G").

9.      As late as October 31, 2007, Plaintiffs' counsel represented that no documents responsive to Defendants' discovery requests existed.  Attorney Winford Dunn signed and returned a letter from defense counsel expressly agreeing that that statement was true.  (Ex. "S").

10.      Plaintiffs Melvin Sacks and Marilyn Proctor were served with another Request for Production of Documents, requesting a report by Mission Investigations.  Their responses to the Request for Production, dated September 28, 2007, however, were that they had no responsive documents but asserted attorney-client and attorney work-product privileges.  (Ex. "G").

11.      On November 7, 2007, Defendants served a Notice of Intention to take the Deposition by Written Questions of Mission Investigations.  (Ex. "H").  The deposition was scheduled for November 21, 2007.

12.      On November 15, 2007 Plaintiffs Melvin Sacks and Marilyn Proctor filed a Motion to Quash and Motion for Protection asserting attorney-client and attorney work-product privilege over the production of Mission Investigations records and also filed a privilege log containing a five-page report prepared by Samuel Zamora of Mission Investigations.  (Exs. "I" and "J").

13.     Defendants responded to Plaintiffs Motion for Protective Order and to Quash Subpoena on November 30, 2007.  (Ex. "K").  The Court subsequently denied Plaintiffs Melvin and Marilyn Proctor's Motion for Protection and to Quash on December 6, 2007.  (Ex. "L").

14.     Defendants received the Mission Investigations report on December 21, 2007 from Mission Investigations in response to the court's order.  (Ex. "A").  <u>Plaintiffs Melvin Sacks and Marilyn Proctor, however, have yet to produce the Mission Investigations report and other materials in their possession, despite the Court's order compelling them to do so.</u>

15.     The Mission Investigations report contains new evidence, including previously undisclosed witnesses and information.  Most importantly, the report shows that Richard Sacks and Holly Sacks purchased the illegal drug ecstasy from a known drug dealer on a street corner in Mexico the night before Richard Sacks died.  (Ex. "A").  The sworn deposition testimony of all three Plaintiffs denies knowledge of this.

16.     Plaintiff Holly Sacks stated in her deposition taken on October 5, 2007 that to her knowledge, she and Richard Sacks had used ecstasy in 2002 and not in 2003.  (Ex. "M").  Plaintiff Holly Sacks, however, neglected to mention that they purchased pills, later identified as ecstasy, from a street corner in Mexico the night before the death of Richard Sacks.  *Id.*

17.     Plaintiff Melvin Sacks stated in his deposition taken on October 11, 2007 that he knew about Richard's drug use prior to his death, but only marijuana, and Melvin Sacks specifically did not know about ecstasy use.  (Ex. "N").  He also stated he did not have any specific knowledge of what type of drugs Richard was using, and that all his information on the subject came from Holly Sacks.  *Id.*

18.     Plaintiff Marilyn Proctor stated in her deposition taken on October 29, 2007 that she "would be very –very surprised because he would be afraid" to use ecstasy.  (Ex. "O").  Plaintiff Marilyn Proctor stated that she did not know of Richard's drug use other than smoking marijuana.  In fact, Plaintiff Marilyn Proctor stated that she was not aware that Richard Sacks had purchased illicit drugs

from a stranger in Mexico because Plaintiff Holly Sacks did not divulge this information and if she had known about this information she would have insisted that the drug be preserved and toxicology screen or something of that nature be done.

19.     However, the June 28, 2003 Mission Investigations report unambiguously states, "The results of this Investigations have been discussed with both of the parents and Jeff Sacks as well as Attorney Paul Kelly.  A report has been submitted for all to review."  (Ex. "A").  In addition, the report lists Mission Investigations' client as "Sacks Family," even though Plaintiffs submitted that none of them had possession or control of the report.  *Id.*  Plaintiffs did not acknowledge the existence of, or claim privilege over, the report until November 15, 2007, the final day of fact discovery, despite repeated attempts at discovery by Defendants.

20.     The report names seven previously undisclosed witnesses whose accounts, as recorded by Mission Investigations, directly contradict critical aspects of the sworn deposition testimony of Plaintiffs Holly Sacks, Melvin Sacks, and Marilyn Proctor.

21.     The report names Arturo Jimenez, Ricardo, and Jose as witnesses who saw Richard Sacks the night before his death.  According to the report,

> **At some point between 11:30 and midnight [the night before Richard died], Holly exited the restaurant and met with Arturo and she handed him two bills.  He then handed her what the witnesses later learned from Arturo were "Ecstasy" pills with a cartoon character inscribed on the pill believed to be Bugs Bunny.**

(Ex. "A").  The testimony of these individuals is critical to understanding what exactly happened in Mexico on the dates in question.  This is obviously also critical to Defendants' case and directly impacts the credibility of Plaintiffs.  It is likely that any testimony or other evidence from these witnesses must be obtained via the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters.  Any evidence that Defendants may wish to obtain from witnesses located in Mexico could be a very lengthy process.

22.     Additionally, the depositions of Jeffrey Sacks, Dr. Mitchell, Dr. Fred Del Marva, and Joachim Fels also need to proceed in the discovery phase of this case.  Defendants have already asked the Court for sanctions based upon the ex parte depositions of Sergio Farias and Mariana Zardain, and those motions are incorporated by reference.

## II.     ARGUMENT AND AUTHORITY

### I.     Sanctions

23.     Courts impose discovery sanctions to secure compliance with the rules of discovery, deter others from violating them, and punish those who do violate them.  *Tobias v. Davidson Plywood*, 241 F.R.D. 590, 592 (E.D. Tex. 2007), *citing Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639, 643 (1976).  The Court has the inherent power to sanction conduct that is not effectively sanctionable pursuant to an existing rule or statute.  *Tobias*, 241 F.R.D. at 592, *citing Toon v. Wackenhut Corr. Corp*., 250 F.3d 950, 952 (5th Cir. 2001).

### A.     Striking and Dismissing Plaintiffs' Complaint

24.     Defendants request that Plaintiffs' Complaint be stricken and their claims be dismissed with prejudice, or alternatively, default judgment be entered for Defendants.  Rule 37 authorizes a district court to strike pleadings and render a default judgment against a party as a sanction for failure to comply with a discovery order or permit discovery, including orders under Rule 26(f).  FED. R CIV. P. 37(b)(2)(A)(iii), (v), and (vi).[1]  This sanction is also available when a party fails to disclose information under Rule 26(a) or (e).  FED. R CIV. P. 37(c)(1)(C).  The granting of discovery sanctions, including default judgment, is reviewed for abuse of discretion.  *United States v. $49,000 Currency*, 330 F.3d 371, 376 (5th Cir. 2003).

25.     In determining sanctions involving striking a pleading, the Court *must* consider (1) willfulness or bad faith by a party and (2) whether a lesser sanction would appropriately deter such

---

[1] Unless otherwise noted, citations to Federal Rules of Civil Procedure are to the version enacted December 1, 2007.

conduct.  *United States v. $49,000 Currency*, 330 F.3d 371, 376 (5th Cir. 2003) (citations omitted).  The court *may* consider "whether the discovery violation prejudiced the opposing party's preparation for trial, and whether the client was blameless in the violation."  *Id.* (citations omitted); *see also Tobias*, 241 F.R.D. at 592 (advising that a clear record of delay may also be considered).

### 1.  <u>Willfulness and bad faith of Plaintiffs</u>

26.     Plaintiffs failed to disclose the existence of the Mission Investigations report in their initial disclosures as they were obligated to do under the Rules.  Furthermore, Plaintiffs deceitfully and willfully failed to disclose the Mission Investigations report and the witnesses named therein, and after numerous discovery requests by Defendants.  When repeated discovery requests are ignored or answered inaccurately, dismissal is appropriate.

27.     In *Tobias*, the plaintiff asked defendant three times whether it had a worker's compensation policy that covered the plaintiff.  After the third request, the defendant responded that it did not have such a policy.  In response to a motion to strike the defendant's affirmative defense, the defendant suddenly asserted that it had a policy covering the plaintiff but did not present the policy to the court.  "It is clear to the court that given the earlier instructions, either Defense counsel or Defendant, could have produced this policy at any time, but chose to represent that no policy which would cover [the plaintiff] existed."  *Tobias*, 241 F.R.D. at 593.

28.     The District Court for the Eastern District of Texas found no evidence that the failure to disclose the policy was accidental or based on mistake, and there was a clear record of delay.  The court concluded that such action by the defendant was a willful, bad faith concealment of a material piece of evidence.  The plaintiff, after receiving confirmation from the defendant that no policy existed, incurred extensive expenses including hiring experts and conducting depositions.  Scheduled discovery and motion dates had passed or were imminent.  "The court concludes that to allow the introduction of the policy at this stage of the case would substantially and unfairly prejudice [the plaintiff].  There is also no

7

indication that a continuance would cure the prejudice because Plaintiff has already incurred the costs, and already relied on Defendant's statement that no policy existed in pursuing this case." *Tobias*, 241 F.R.D. at 594.  As in the instant case, discovery deadlines have passed, all three Plaintiffs have been deposed, and numerous experts have been deposed after Plaintiffs stated that no report existed.

29.     "This is not an ordinary case involving disclosure violations.  Given defendant's utter disregard for this court's written orders and oral instructions, the court concludes that a lesser sanction will not adequately punish its violations, nor deter it and others from violating the discovery rules and this court's orders." *Tobias*, 241 F.R.D. at 594.  "A party is not allowed to lie in wait behind a log and then ambush the other party with a key piece of evidence after extensive discovery and expenses have been incurred.  [The defendant] chose not to disclose the policy.  In fact, [the defendant] represented that no policy existed….Because the existence of a valid workers' compensation policy is an essential element of Defendant's affirmative defense, the court will strike the defense." *Id*.

30.     In the instant case, the Mission Investigations report is the key piece of evidence in showing what actually occurred in Mexico on the dates in question, and in proving Four Seasons' defense and affirmative defenses.  Most importantly, Richard and Holly Ann Sacks purchased the illegal drug ecstasy from a drug dealer on a street corner in Mexico the night before Richard died.  (Ex. "A").  Surprise disclosure of the Mission Investigations report at this late stage of the game was Plaintiffs' choice, and they should have to abide by the consequences of disobeying discovery rules and orders.

31.     Similarly, defendants in *Immuno Vital, Inc. v. Telemundo Group, Inc*., 203 F.R.D. 561 (S.D. Fla. 2001) denied the existence of sales contracts until one of their employees contradicted this at deposition. 203 F.R.D. at 571-72.  The defendants then changed their story and argued that the contracts were not produced because they were redundant and unduly burdensome.  The plaintiff was prejudiced because it was denied the opportunity to depose the defendants' witnesses about the documents.  Even if

the documents were produced, the plaintiff's "ability to use the documents effectively at trial would have been significantly diminished." *Id*. at 573.

32.     In the instant case, Plaintiffs and their attorneys presented a united front that no report existed from Mission Investigations.  When Defendants subpoenaed this material, Plaintiffs changed their story and claimed privilege.  This is too little, too late.  Defendants must essentially rebuild their case as well as sift through the true and untrue testimony and discovery responses of Plaintiffs. Dismissal is the only appropriate sanction by this Court.

## 2.     Lesser sanctions are inappropriate

33.     Striking pleadings and granting default judgment is a sanction of last resort and appropriate only where lesser sanctions are inadequate.  *See, e.g.*, *Tobias*, 241 F.R.D. at 594 ("This is not an ordinary case involving disclosure violations.  Given defendant's utter disregard for this court's written orders and oral instructions, the court concludes that a lesser sanction will not adequately punish its violations, nor deter it and others from violating the discovery rules and this court's orders."). "However, it is also true that 'over leniency is to be avoided where it results in inadequate protection of discovery.'"  *Immuno Vital*, 203 F.R.D. at 573, *quoting In re Liquid Carbonic Truck Drivers Chem. Poisoning Litig*., 580 F.2d 819, 823 (5th Cir. 1978).

34.     While another continuance of discovery dates and trial dates might allow the exchange of documents and depositions regarding the documents, a continuance is not a viable option in this case. *Immuno Vital*, 203 F.R.D. at 573; *accord Tobias*, 241 F.R.D. at 594 ("There is also no indication that a continuance would cure the prejudice because Plaintiff has already incurred the costs, and already relied on Defendant's statement that no policy existed in pursuing this case.").  Another continuance would inappropriately reward Plaintiffs in this case for their dilatory actions as well as punish Defendants. *Immuno Vital*, 203 F.R.D. at 573, *citing Goforth v. Owens*, 766 F.2d 1533, 1535 (11th Cir. 1985).  The trial date in the instant case has been moved back twice already.

9

35.      To allow Plaintiffs in this case to willfully deny the existence, and conceal the contents, of the Mission Investigations report for four years in order to sustain their claims warrants the most severe sanction available.  "The most severe in the spectrum of sanctions provided by statute or rule *must* be available to the District Court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent."  *Tobias*, 241 F.R.D. at 592 (emphasis in original), *citing Coane v. Ferrara Pan Candy Co*., 898 F.2d 1030, 1032 (5th Cir. 1990).   In the event that the Court views Plaintiffs' recent production of the report as a proper supplement of disclosures, Defendants argue that such disclosure of the report is untimely.

36.      A lesser sanction such as a jury instruction on the withholding of the report would not be effective in this case.  "[I]t is not entirely clear from the pleadings what the jury would have to infer in order to cure the prejudice suffered by Plaintiff, as Defendants' delay and noncompliance appears to have permeated so many areas of trial preparation."  *Immuno Vital*, 203 F.R.D. at 574.

37.      Here, it is not clear what charge could be formulated that would alleviate the prejudice to Defendants and properly punish Plaintiffs.  A lesser sanction would not remedy the great expense and substantial time Four Seasons and its experts spent deducing, from produced discovery, some of the information in the report.  *See Immuno Vital*, 203 F.R.D. at 574.

### 3.      Plaintiffs as individual clients are not blameless

38.      "This Court, and the Supreme Court, as well, have often forbidden the dismissal of a case if the conduct involved was not willful or contumacious."  *Chilcutt v. United States*, 4 F.3d 1313, 1322 n.22 (5th Cir. 1993) (citations omitted).  Although a court should be reluctant to dismiss with prejudice unless the plaintiff is actually culpable, *Gratton v. Great Am. Communications*, 178 F.3d 1373, 1375 (11th Cir. 1999), in this case, Melvin Sacks and Marilyn Proctor were directly involved in the delay concerning the report.  Samuel Zamora, the preparer of the report, discussed his findings with Richard

Sacks' parents as well as their attorney.  (Ex. "A").  It is not known if Mr. Zamora indeed contacted

Holly Ann Sacks—his stated intention in the report.  In addition, testimony that all three Plaintiffs gave

under oath at deposition conflicts with information in the report.

39.     Melvin Sacks stated under oath that he knew about Richard's drug use prior to his death,

but only marijuana, and Melvin Sacks did not know about ecstasy use.  (Ex. "J").  He also stated he did

not have any specific knowledge of what type of drugs Richard was using, and that all his information

on the subject came from Holly.  *Id.*  Marilyn Proctor stated under oath that she did not know of

Richard's drug use other than smoking marijuana, and she specifically did not know of his ecstasy use.

(Ex. "K").  She also stated that if she were aware that Richard had purchased drugs from a stranger in

Mexico, she would have asked the drugs to be preserved.  *Id.* at 40.  Additionally, if Marilyn Proctor had

known Richard used those drugs immediately before his death, she would have asked for a toxicology

screening.  *Id.*  Holly Ann Sacks stated under oath that she and Richard only used ecstasy in 2002, not in

2003.  (Ex. "I").

40.     It defies logic that Melvin Sacks and Marilyn Proctor would not have confronted Holly

Sacks about the report when they were confronted with its contents.  The report contained a possible

explanation of Richard's sudden death and contradicted what Holly allegedly told Melvin and Marilyn

had transpired in Mexico.

41.     The notes of Dr. Ravella, Melvin Sacks' psychologist, contained entries that Melvin

Sacks blamed Holly for Richard's death, he suspected Holly murdered Richard, and Richard killed

himself.  These statements are all consistent with knowing that Holly and Richard purchased illicit drugs

which may have been the direct cause of Richard's death.  (Ex. "J").

42.     Here, all Plaintiffs and their counsel willfully misrepresented the existence of the report.

"[T]he credible evidence in the record of this case reveals quite readily that the [defendant] not only

intentionally withheld documents that it knew existed, but it also knowingly made blatant

11

misrepresentations to the district court about the existence of those documents.  Such conduct, in our view is patently willful and contumacious."  *Chilcutt v. United States*, 4 F.3d 1313, 1322-23 (5th Cir. 1993).  The Plaintiffs and their counsel willfully and contumaciously denied the existence of a key piece of evidence for the Defendants.

### 4.     Substantial prejudice to Defendants

43.     Plaintiffs finally admitted the existence of the June 28, 2003 Mission Investigations report on November 15, 2007 by submitting a privilege log on the final day of fact discovery.  Without question, admitting to the existence of a crucial piece of evidence on the final day of discovery caused prejudice to Defendants.  Plaintiffs also failed to disclose the report by the discovery deadlines in previous orders.  Samuel Zamora, the preparer of the Mission Investigations report, may have made notes, taken photographs or videos, and obtained contact information from witnesses.  This important information is not contained in the recently disclosed report, and Defendants must now determine if any of this evidence existed.  There has been a four-year delay in obtaining the report, and these preparatory materials may or may not still be available due to the Plaintiffs delay in disclosure.

44.     The information in the Mission Investigations report is relevant and critical to the defense of this case.  Plaintiffs contend that Richard Sacks had a heart attack based on genetic predisposition and that he could have survived if he received prompt emergency transport and medical services.  This new evidence throws open the issue of the cause of Richard Sacks' death, the sole cause of which could now possibly be illegal drug use, as well as the contributory negligence of Richard and Holly Sacks.

45.     The use of unregulated, illicit drugs raises the possibility that no emergency medical response could have saved Richard Sacks.

46.     Holly Sacks made the decision not to have an autopsy, which would have included a toxicology screening, performed even though Marilyn Proctor wanted one.  (Exs. "I" and "K").  Holly

Sacks knew of illegal drug use at Punta Mita and was hiding behind Jewish law to cover up what actually happened.

47.     Plaintiffs attempted to sustain their cause of action for several years by first denying the existence of the Mission Investigations report, and then claiming privilege on the day discovery closed. Settlement figures and postures as well as legal theories and strategies will have to be substantially altered.   This wrongful withholding forces Defendants to move to reopen discovery, depose new witnesses named in the report, and redepose almost all witnesses in this case—subjecting blameless Defendants to significant costs.

## II.      New Scheduling Order and Trial Date

48.     If the Court does not strike Plaintiffs' pleadings and dismiss their claims with prejudice, Defendants request in the alternative that a new scheduling order be entered to reopen discovery, and a new trial date set.

49.     A schedule may be modified for good cause and with the judge's consent.  FED. R CIV. P. 16(b)(4).  "The good cause standard requires the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.  *S & W Enters., L.L.C. v. S. Trust Bank of Alabama*, 315 F.3d 533, 535 (5th Cir. 2003) (citation omitted).  Defendants have demonstrated good cause for an extension due to wrongful withholding of material evidence, and have timely moved for amendment of scheduled deadlines.

50.     Defendants request that fact discovery be reopened, leave be granted to redepose Plaintiffs and their experts, and that the discovery deadlines and trial date be pushed back seven months to accommodate the substantial discovery that now must be undertaken due to Plaintiffs wrongful withholding of the Mission Investigations report and the significant information contained therein. Therefore, a new scheduling order is necessary.  (Ex. "T").

51.     Defendants request that discovery be reopened for six months because of the expected time involved in gathering evidence via the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters.

### III.     Costs

52.     Whether the Court strikes Plaintiffs' pleadings and dismisses their claims with prejudice, or enters a new scheduling order, Defendants request that Plaintiffs pay any costs, fees, and expenses stemming from the wrongful withholding of the Mission Investigations report, and incurred in redeposing the witnesses that have already been deposed prior to the production of the Mission Investigations report.

53.     The Court *must* order Defendants costs be paid for the violation of a discovery order, FED. R CIV. P. 37(b)(2)(C), and *may* order payment of costs the failure to disclose under Rule 26(a) or (e).  FED. R CIV. P. 37(c)(1)(A).

54.     Under Rule 37(c)(1)(A), the failure to disclose the report is neither justified nor harmless. "In evaluating whether a violation of Rule 26 is harmless, the court should consider:  (1) the importance of the evidence; (2) the prejudice to the opposing party of allowing the evidence to come in; (3) the possibility for curing such prejudice by granting a continuance; and (4) the explanation, if any, for the party's failure to comply with the disclosure requirements."  *Tobias*, 241 F.R.D. at 592, *citing Texas A & M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003).

55.     The Mission Investigations report forms a substantial basis for Defendants' affirmative defenses.  Defendants are not prejudiced by the report so a continuance is inappropriate.  Further, Plaintiffs have offered no good reason for withholding the report.  Thus, sanctions against Plaintiffs are appropriate.

56.     In the alternative, a ruling by the Court may be reserved pending redeposition of Plaintiffs and the investigators to determine the details of communication of the Mission Investigations report.

WHEREFORE, the Defendants, FOUR SEASONS HOTELS LIMITED and FOUR SEASONS PUNTA MITA, S.A. de C.V., request that this Court strike Plaintiffs' Complaint and dismiss their claims with prejudice, or alternatively, default judgment be entered against Plaintiffs and in favor of Defendants.  In the alternative, Defendants request that fact discovery be reopened, leave be granted to redepose Plaintiffs and their experts, and that the discovery deadlines and trial date be pushed back approximately seven months to accommodate the substantial discovery that must now be undertaken. Defendants ask that the Court to order Plaintiffs to pay any and all costs, fees, and expenses stemming from the wrongful withholding of the Mission Investigations report.  Defendants request oral argument on these issues.

Respectfully submitted,

CREMER, KOPON, SHAUGHNESSY & SPINA, L.L.C.

By:     __/s/ William J. Cremer_____
WILLIAM J. CREMER (*of counsel*)
State Bar No. 6180833
180 N. LaSalle, Suite 3300
Chicago, Illinois 60601
(312) 980-3014 (Telephone)
(312) 726-3818 (Telecopier)
E-mail: wcremer@cksslaw.com

GODWIN PAPPAS RONQUILLO, LLP
MARCOS G. RONQUILLO (*attorney in charge*)
State Bar No. 17226000
JOSE L. GONZALEZ (*of counsel*)
State Bar No.  08129100
1201 Elm Street, Suite 1700
Dallas, Texas 75270-2084
(214) 939-4400 (Telephone)
(214) 760-7332 (Telecopier)
E-mail: mronquillo@godwinpappas.com
E-mail: jgonzalez@godwinpappas.com

## CERTIFICATE OF CONFERENCE

Pursuant to the Federal Rules of Civil Procedure, counsel for Defendants hereby represents that he conferred with opposing counsel in a good faith attempt to resolve any issues regarding this motion for sanctions, new scheduling order, and costs.  Plaintiffs are opposed to the instant motion and the relief requested therein.


_____/s/ William J. Cremer_____

16

**CERTIFICATE OF SERVICE**

        This is to certify that on January 9, 2008, this response to Plaintiffs' motion to compel was served on the following counsel electronically via the Court's ECF system:

Windle Turley
Law Offices of Windle Turley, P.C.
6440 North Central Expressway
1000 Turley Law Center
Dallas, Texas 75206

Winford L. Dunn
Dunn, Nutter & Morgan, L.L.P.
Suite Six, Stateline Plaza, Box 8030
Texarkana, Texas 71854

Marcos G. Ronquillo
Godwin Pappas Ronquillo, LLP
1202 Elm Street, Suite 1700
Dallas, Texas 75270-2084

                                        _____/s/ William J. Cremer_____