IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| 1. HOLLY ANN SACKS, Individually and and as Representative of the Estate of RICHARD TODD SACKS, 2. MELVIN PHILLIP SACKS, and 3. MARILYN PROCTOR, | § § § § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. 5-04-073 JURY |
| VS. | § § | |
| 1. FOUR SEASONS HOTELS LIMITED and 2. FOUR SEASONS PUNTA MITA, S.A. de C.V., | § § § § | |
| Defendants. | § | |

## DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO QUASH DEFENDANTS' DEPOSITION NOTICE OF DR. TEDD MITCHELL

COME NOW Four Seasons Hotels Limited and Four Seasons Punta Mita, S.A. de C.V., ("Four Seasons") and file their Response to Plaintiffs' Motion to Quash Defendants' Deposition Notice of Dr. Tedd Mitchell and would respectfully show the following:

## I.   PROCEDURAL BACKGROUND

1.     Four Seasons has made several efforts to secure the deposition of Dr. Tedd Mitchell ("Dr. Mitchell") since, at least, November 2007. Dr. Mitchell is a physician who drafted the physical consultation report that addressed Richard Sacks' cardiovascular evaluation. Dr. Mitchell is an unretained medical expert whose testimony is extremely relevant to Plaintiffs' claims that Richard Sacks died from cardiac arrest due to Four Seasons' alleged negligence and to the cardio toxic effects of the decedent's admitted abuse of illicit drugs. Throughout Four Seasons' repeated efforts to secure Dr. Mitchell's deposition around his patients schedule, Plaintiffs have never provided alternative dates; rather Plaintiffs have merely repeatedly indicated they were unavailable on the dates

1

proposed.  Once again, rather than cooperating and providing alternative dates, Plaintiffs resort to dilatory tactics.

2.      The Fourth Amended Scheduling Order provides a deadline for Defendants to depose Plaintiffs' expert witnesses on December 17, 2007.  As an unretained expert and Richard Sacks' treating physician, the deposition of Dr. Mitchell falls within expert discovery and Defendants' deadline to depose expert witnesses by December 17, 2007. Defendants have taken the depositions of other of Richard Sacks' treating physicians during the expert discovery period, and Plaintiff offered no argument that treating physicians fell within the "fact" discovery cutoff deadline, as they now contend.

3.      On November 12, 2007, Four Seasons served Defendants' Rule 45 Subpoena to T.L. (Tedd) Mitchell, M.D. requiring Dr. Mitchell to attend and give deposition testimony on November 16, 2007.[1]  On November 14, 2007, Four Seasons served the Subpoena and Defendants' Notice of Intention to Take the Oral and Videotaped Deposition of T.L. (Tedd) Mitchell, M.D. to Plaintiffs ("Mitchell Deposition Notice").[2]

4.      On November 14, 2007, the Turley Law Firm sent an e-mail to William Cremer indicating that Mr. Turley was not available for the November 16 deposition of Dr. Mitchell because he would be in a deposition.[3]  The Turley Law Firm requested that Four Seasons immediately withdraw the Deposition Notice of Dr. Mitchell or they would file a motion with the Court but offered no alternative dates to accommodate their schedule.

5.      Defendants adhered to Plaintiffs' request and cancelled the deposition of

---

[1]      *See* Exhibit "A," Defendants' Rule 45 Subpoena to T.L. (Tedd) Mitchell, M.D.
[2]      *See* Exhibit "B," Defendants' Notice of Intention to Take the Oral and Videotaped Deposition of T.L. (Tedd) Mitchell, M.D.
[3]      *See* Exhibit "C," November 14, 2007 e-mail from the Turley Law Firm to William Cremer.

Dr. Mitchell pending rescheduling on a mutually agreeable date.[4]

6.      After cancelling the deposition of Dr. Mitchell, Four Seasons immediately began efforts to secure mutually agreeable dates to conduct the deposition of Dr. Mitchell (and other witnesses). On November 16, 2007, Four Seasons sent an e-mail to Windle Turley's office indicating that Dr. Mitchell was available for deposition on December 13, 2007 and providing two dates for the deposition of Dr. Ravella.[5] The December 13th date was coordinated with Dr. Mitchell's office and fell within the expert discovery period. Further, on November 19, 2007, Four Seasons sent a follow-up e-mail to Windle Turley's office asking if Mr. Turley was available on the proposed dates for the depositions of Dr. Mitchell and/or Dr. Ravella.[6]

7.      On November 19, 2007, the Turley Law Firm responded and indicated that Windle Turley was not available on "either of [the] dates" proposed for the depositions of Dr. Mitchell and Dr. Ravella but again failed to provide alternative dates.[7] Shortly thereafter, Four Seasons asked the Turley Law Firm which two dates Windle Turley was not available as Four Seasons had proposed more than two dates for the depositions of Dr. Mitchell and Dr. Ravella.[8] The Turley Law Firm never responded.

8.      On November 20, 2007, Four Seasons again e-mailed the Turley Law Firm requesting deposition dates for Dr. Mitchell.[9] In response, in an e-mail dated November 21, 2007,  the Turley Law Firm merely stated that Dr. Mitchell was not listed on

---

[4]      *See* Exhibit "D." November 14, 2007 e-mail from Godwin Pappas Ronquillo LLP to Windle Turley and Winford Dunn.

[5]      *See* Exhibit "E," November 16, 2007 e-mail from Cremer, Kopon, Shaughnessy & Spina, LLC to the Turley Law Firm.

[6]      *See* Exhibit "F," November 19, 2007 e-mail from Cremer, Kopon, Shaughnessy & Spina, LLC to the Turley Law Firm.

[7]      *See* Exhibit "G," November 19, 2007 e-mail from the Turley Law Firm to Cremer, Kopon, Shaughnessy & Spina, LLC.

[8]      *See* Exhibit "H," November 19, 2007 e-mail from Cremer, Kopon, Shaughnessy & Spina, LLC to the Turley Law Firm.

[9]      *See* Exhibit "I," November 20, 2007 e-mail from Cremer, Kopon, Shaughnessy & Spina, LLC to

Plaintiffs' designation of experts.[10]

9.    On November 21, 2007, Four Seasons followed-up noting that the parties needed to schedule the deposition of Dr. Mitchell, and others who were listed as experts by Mr. Winford Dunn in his separate disclosures, and that Four Seasons presumed that Windle Turley would want to attend the depositions given his previous protestations.[11]

10.    On November 30, 2007, Four Seasons was made aware that Dr. Mitchell was not available at any other time in December for deposition other then December 13 as previously noted, and for which date Mr. Turley indicated he was not available.

11.    Upon finding that Dr. Mitchell was not available for deposition in December, Four Seasons began coordinating to determine when Dr. Mitchell would be available for deposition in January.  Dr. Mitchell's office provided dates when Dr. Mitchell was available for deposition.

12.    Based upon Dr. Mitchell's limited availability, Four Seasons sent an e-mail to the Turley law firm on January 9, 2008, providing seven available dates for the depositions of Jeffrey Sacks and Dr. Mitchell.[12]

13.    On January 9, 2008, the Turley Law Firm responded that Mr. Turley was not available for four of the seven dates provided.[13]  The Turley Law Firm indicated they would check on the remaining three dates but <u>never</u> responded to the other three dates and never indicated they had a conflict with those three dates.

---

the Turley Law Firm.
[10]    *See* Exhibit "J," November 21, 2007 e-mail from the Turley Law Firm to Cremer, Kopon, Shaughnessy & Spina, LLC.
[11]    *See* Exhibit "K," November 21, 2007 e-mail from Cremer, Kopon, Shaughnessy & Spina, LLC to the Turley Law Firm.  Four Seasons' assumption that Mr. Turley would want us to coordinate with his office and that he would want to attend the deposition of Dr. Mitchell was completely reasonable given Mr. Turley's request that Four Seasons' cancel the previously scheduled November 16, 2007 deposition of Dr. Mitchell because Mr. Turley could not be present.
[12]    *See* Exhibit "L," January 9, 2008 e-mail from Godwin Pappas Ronquillo LLP to the Turley Law Firm.
[13]    *See* Exhibit "M," January 9, 2008 e-mail from the Turley Law Firm to Godwin Pappas Ronquillo

14. When Four Seasons did not hear back from the Turley Law Firm regarding the three remaining dates, and cognizant of Dr. Mitchell's limited availability based on his patients' schedule, Four Seasons served Dr. Mitchell with Defendants' Rule 45 Subpoena to T.L. (Tedd) Mitchell, M.D. dated January 11, 2008 ("Second Mitchell Subpoena") and an Amended Notice of Intention to Take the Oral and Videotaped Deposition of T.L. (Tedd) Mitchell, M.D. ("Amended Deposition Notice"). In efforts to set his deposition, Dr. Mitchell's office has indicated his preference to appear for depositions rather than conduct an interview.

15. On January 11, 2008, Four Seasons sent Plaintiffs copies of the Second Mitchell Subpoena and the Amended Deposition Notice.[14]

16. After receiving the Second Mitchell Subpoena and the Amended Deposition Notice, Windle Turley sent an e-mail to Four Seasons wrongly indicating that Four Seasons had not consulted or discussed deposition dates for Dr. Mitchell with the Turley Law Firm and asking for the Amended Deposition Notice to be withdrawn.[15] For the first time, and after the Notice had been sent, the Turley Law Firm asserted that he was already noticed in a deposition in New Jersey on that same date. The January 11, 2008 e-mail from Windle Turley indicated that if the Amended Deposition Notice was not withdrawn he would file a motion to quash but in typical fashion offered no alternative dates. Of note, the January 11, 2008 e-mail from Windle Turley did not raise any issues with the Fourth Amended Scheduling Order regarding the January 17 deposition of Dr. Mitchell.

17. On January 11, 2008, Four Seasons sent a response e-mail to Windle

---

LLP
[14] *See* Exhibit "N," January 11, 2008 Letter from Godwin Pappas Ronquillo LLP to the Turley Law Firm and Winford L. Dunn Jr.
[15] *See* Exhibit "O," January 11, 2008 e-mail from Windle Turley to Godwin Pappas Ronquillo LLP.

Turley providing e-mail documentation of Four Seasons' efforts to coordinate scheduling the deposition of Dr. Mitchell with the Turley Law Firm which included the e-mail correspondence of January 9, 2008 discussed above.[16]

18.     On January 14, 2008, rather than offer alternative dates, Plaintiffs filed their Motion to Quash Defendants' Deposition Notice of Dr. Tedd Mitchell ("Motion to Quash.").

19.     As is fairly evident from the correspondence, Defendants have made diligent efforts to coordinate the deposition of Dr. Mitchell only to be thwarted at every turn by the Turley Law Firm.

## II.     ARGUMENT AND AUTHORITIES

### A.     Dr. Mitchell Possesses Information Relevant to Four Seasons' Defenses

20.     Richard Sacks was examined by the Cooper Clinic on January 27, 2003, approximately five months prior to his death. According to Holly Sacks, Richard Sacks was initially assessed by the Cooper Clinic as a preventative measure. Further, Marilyn Proctor stated in her deposition of October 29, 2007 that Richard Sacks was assessed by the Cooper Clinic after Jeffery Sacks was diagnosed with a clogged artery.

21.     Dr. Mitchell is the president and chief operating officer of the Cooper Clinic. Dr. Mitchell is also the referring physician during Richard Sacks' medical evaluation on January 27, 2003 at the Cooper Clinic. Dr. Mitchell drafted the physician consultation report in which he noted that Richard was a 34-year-old male who was assessed for a cardiovascular evaluation. In Richard Sacks' cardiovascular evaluation, Dr. Mitchell noted that his cardiovascular review of symptoms was unremarkable, and he showed no signs of acute or chronic disease. Richard Sacks' death certificate from

---

[16]     *See* Exhibit "P", January 11, 2008 email to Turley Law Firm.

Mexico, however, states that Richard Sacks died of a heart attack but no autopsy was performed to confirm that finding. Defendants have recently submitted expert reports from a forensic pathologist and medical examiner who question that finding. Because of his assessment of Richard Sacks, Dr. Mitchell would provide additional information as to the accuracy of Richard Sacks' evaluation and whether it is common for a healthy male to die of a heart attack after he was given a positive assessment. Given Richard Sacks propensity to abuse illicit drugs, a drug overdose is certainly a possible cause of death.

22.     Additionally, the Plaintiffs in this case have consistently indicated that Richard Sacks regularly exercised, ate a healthy diet, daily smoked marijuana and previously ingested Ecstasy, making Richard's untimely death as a result of a heart attack more unlikely even with a positive family history. Dr. Mitchell merely found that Richard Sacks had high cholesterol and that Richard Sacks had a calcium score that placed him in the 95th and 99th percentile for his age. He recommended that Richard Sacks work on lowering his cholesterol, take antioxidant vitamin supplements, limit his alcohol intake from twenty drinks to one drink per day and prescribed Lipitor 10 mg daily.

23.     Four Seasons seeks the deposition of Dr. Mitchell to verify the information produced to Four Seasons in discovery regarding Richard Sacks' prior medical evaluations and medical history. In light of the newly discovered Mission Investigations report, indicating that Richard Todd Sacks purchased Viagra and Ecstasy the night prior to his death and the potential cardio toxic health consequences thereof, the deposition of Dr. Mitchell is incredibly important in assessing Richard Sacks' health prior to the time of his death.

24.     Dr. Mitchell has a full-time medical practice. As such, it has been difficult to find dates to schedule a deposition of this busy practitioner. Four Seasons has

repeatedly attempted to secure times for Dr. Mitchell's deposition from Plaintiffs that could coordinate with Dr. Mitchell's patient schedule.  Plaintiffs, however, have not cooperated.

**B.      Plaintiffs' Request for a Protective Order is Improper**

25.     As indicated in Plaintiffs' Motion to Quash, Plaintiffs file the Motion to Quash pursuant to Rule 26(c)(1) of the Federal Rules of Civil Procedure and seek a protective order from the Court that the <u>fact</u> witness deposition of Dr. Mitchell not be taken.[17]  Rule 26(c)(1) of the Federal Rules of Civil Procedure provides:

> A party or any person from whom discovery is sought may move for a protective order...The court may, for good cause, issue an order to protect a party or person *from annoyance, embarrassment, oppression, or undue burden or expense*, including one or more of the following:
>
> (A) forbidding the disclosure or discovery;
>
> (B)  specifying terms, including time and place, for the disclosure or discovery;
>
> (C)  prescribing a discovery method other than the one selected by the party seeking discovery;
>
> (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;
>
> (E) designating the persons who may be present while the discovery is conducted;
>
> (F) requiring that a deposition be sealed and opened only on court order;
>
> (G)  requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and
>
> (H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

FED. R. CIV. P. 26(c)(1) (emphasis added).  Further, Rule 26(c)(2) provides that "[i]f a motion for a protective order is wholly or partly denied, the court may, on just terms, order

---

[17]     *See* Docket Entry 212 at 2, ¶5.

that any party or person provide or permit discovery.  Fed. R. Civ. P. 26(c)(2).

26.   Plaintiffs' Motion to Quash sets forth no argument or evidence as to why Plaintiffs request to depose Dr. Mitchell causes Plaintiffs any annoyance, embarrassment, oppression, or undue expense to meet Plaintiffs' burden to demonstrate good cause as set forth in Rule 26(c)(1).  Plaintiffs' counsel contends he cannot be present at the time the deposition is scheduled.  Plaintiffs have failed to provide any alternative dates to the dates previously, or now proposed, for the deposition of Dr. Mitchell.  Instead of cooperating with Four Seasons' discovery efforts, Plaintiffs merely inform Four Seasons they are not available, do not provide any alternative dates, wait for Four Seasons to issue deposition notices, and then decry the time chosen by Four Seasons and file a motion to quash.  This is not the type of cooperation with discovery that is contemplated under the Federal Rules.  Accordingly, the deposition of Dr. Mitchell should not be quashed and Four Seasons should be allowed to conduct, at last, the necessary deposition of this unretained medical expert who has personal knowledge of the decedent's cardiovascular condition.

27.   The reasons Plaintiff advances for seeking protection from this Court do not warrant forbidding the deposition of Dr. Mitchell.  At most, the Court should require Plaintiffs to provide Defendants with workable dates with the schedule of Dr. Mitchell, to conduct this deposition.  Plaintiffs argue that the deposition of Dr. Mitchell should not be taken because it is outside the <u>fact</u> discovery deadline.  Plaintiffs' argument regarding fact discovery fails for several reasons.

28.   *First*, assuming their premise to be correct, which it is not, Four Seasons attempted to secure the deposition of Dr. Mitchell prior to the close of fact discovery, but Plaintiffs' counsel was unavailable and asked Four Seasons to cancel the deposition, which Four Seasons did pending re-scheduling.  *Second*, Plaintiffs never raised the fact

discovery deadline with Four Seasons during the attempts to secure a deposition date for Dr. Mitchell in November or January. In fact, Plaintiffs only raised this issue within the last five days. **Third**, Plaintiffs have repeatedly issued fact discovery that required responses well past the deadline.[18] Four Seasons responded, despite the untimeliness of these requests. Moreover, all parties have conducted fact discovery well past the deadline in a spirit of cooperation. It is not until Four Seasons is attempting to secure a deposition that it appears Plaintiffs are seeking to avoid that Plaintiffs object based upon the fact discovery deadline.

30.     **Fourth**, Dr. Mitchell is an unretained expert and does not fall within the cut-off for fact discovery in this case. **Fifth**, the testimony of Dr. Mitchell is even more significant in light of the Mission Investigations report that was not provided to Four Seasons, despite requests, until after the fact discovery cut-off. The evidence gleaned from the Missions Investigation report regarding the purchase of Ecstasy and the use of marijuana mixed in with Viagra and alcohol by Richard Sacks the night prior to his death raises additional questions about Richard Sacks medical history and information from the physician treating and evaluating his cardiac health merely five months prior to his death.

31.     Plaintiffs assert that Holly Sacks has been flexible in accommodating Defendants for fact discovery beyond the cutoff date. The correspondence attached as exhibits hereto does not bear out this assertion. Further, as set forth in the Procedural Background and the Exhibits attached to this Response, Plaintiffs have not been flexible in accommodating Four Seasons' request for scheduling the deposition of Dr. Mitchell –

---

[18]     *See* Plaintiff Holly Sacks' Eleventh Request for Production of Documents issued on October 23, 2007, attached hereto as Exhibit "Q." *See also*, Plaintiff Holly Sacks' Fourteenth Request for Production of Documents issued on October 23, 2007, attached hereto as Exhibit "R." *See* Plaintiff Holly Sacks' Twelfth Request for Production of Documents issued November 9, 2007, attached hereto as Exhibit "S." *See also* Plaintiff Holly Sacks' Fifteenth Request for Production of Documents issued November 9, 2007, attached hereto as Exhibit "T."

which is the subject of the present dispute.

32.     Four Seasons has demonstrated that they attempted to depose Dr. Mitchell prior to the cut-off for fact and expert discovery but were required to cancel the deposition due to Plaintiffs' counsel's unavailability.   Further, the procedural background to this Response demonstrates that Four Seasons acted diligently to try and secure the deposition of Dr. Mitchell, but not once did they receive alternative dates from Plaintiffs.

## III.   CONCLUSION AND PRAYER

33.     Due to the necessity of the deposition, especially in light of the Missions Investigation report, Four Seasons seeks to depose Dr. Mitchell.  Four Seasons attempted to secure a date for the deposition of Dr. Mitchell prior to the deadline for fact and expert discovery.  Plaintiffs have not cooperated and have not provided any available dates for the deposition.  Plaintiffs have not demonstrated good cause for this Court to quash the deposition of Dr. Mitchell in its entirety.  Yet, despite Plaintiffs failure to produce all relevant fact discovery to Four Seasons prior to the discovery cut-off, which necessitates Four Seasons' request, Plaintiffs refuse to cooperate.  Accordingly, Four Seasons asks this Court to deny Plaintiffs' Motion to Quash and to allow the deposition of Dr. Mitchell as scheduled on January 17, 2008.

Respectfully submitted,

By:     /s/ Jose L. Gonzalez

MARCOS G. RONQUILLO (*attorney in charge*)
State Bar No. 17226000
JOSE L. GONZALEZ
State Bar No. 08129100
RAMONA SOTO
State Bar No. 24051756

1201 Elm Street, Suite 1700
Dallas, Texas 75270-2084
(214) 939-4400 (Telephone)
(214) 760-7332 (Telecopier)
E-mail: mronquillo@godwingruber.com
E-mail: jgonzalez@godwingruber.com

**CREMER, KOPON, SHAUGHNESSY &
SPINA, LLC**

WILLIAM J. CREMER
Illinois State Bar No. 6180833
180 N. LaSalle, Suite 3300
Chicago, Illinois 60601
(312) 980-3014 (Telephone)
(312) 726-3818 (Telecopier)
E-mail: wcremer@cksslaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document was served on the following counsel of record via U.S. Mail and E-mail this 16th day of January, 2008:

Windle Turley
Law Offices of Windle Turley, P.C
6440 North Central Expressway
1000 Turley Law Center
Dallas, Texas 75206

Winford L. Dunn
Dunn, Nutter & Morgan, L.L.P.
Suite Six, Stateline Plaza, Box 8030
Texarkana, Texas 71854

/s/Jose L. Gonzalez
Jose L. Gonzalez