IN THE UNITED STATES DISTRICT COURT
OF THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| HOLLY ANN SACKS, Individually and as Representative of the Estate of RICHARD TODD SACKS, MELVIN PHILLIP SACKS, and MARILYN PROCTOR, | § § § § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. 5:04-CV-73 |
| V. | § § | |
| FOUR SEASONS HOTELS LIMITED AND FOUR SEASONS PUNTA MITA, S.A. de C.V., | § § § § | |
| Defendants. | § | |

**PLAINTIFF HOLLY SACKS' RESPONSE TO DEFENDANTS' MOTION FOR NEW SCHEDULING ORDER AND TRIAL DATE AND MOTION FOR SANCTIONS**

Plaintiff Holly Sacks files her Response to Defendants' (self-induced Emergency) Motion for New Scheduling Order and Trial Date and Motion for Sanctions, and would respectfully show that the Motion is unfounded and should be denied in its entirety for the following reasons:

1. There is no good cause to justify Defendants' request for sanctions because Plaintiffs have not violated any duty, Federal Rule, or Court Order in this case regarding disclosure of the Mission Report.

2. Pursuant to Fed. R. Civ. P. 26(a)(1)(A), there is no duty to disclose the identity of witnesses when the disclosing party has no intention to ever use the witness to support its claim.

PLAINTIFF HOLLY SACKS' RESPONSE TO DEFENDANTS' MOTION FOR NEW SCHEDULING ORDER AND TRIAL DATE AND MOTION FOR SANCTIONS – Page 1

3. Pursuant to Fed. R. Civ. P. 26(a)(1)(B), there is no duty to disclose a copy or description of a document when the disclosing party has no intention to ever use the document to support its claim.

4. Plaintiffs Melvin Sacks and Marilyn Proctor had properly asserted attorney work product privilege so as to not disclose the Mission Report prior to the Court's ruling on that privilege on December 6, 2007 (Doc. No. 193).

5. Defendants had knowledge of the Mission Investigations' inquiries into the death of Richard Sacks on June 17, 2003– four years before Holly Sacks was ever made aware of it by Defendants on August 31, 2007.

6. Plaintiff Holly Sacks's counsel had not seen a copy of the Mission Report until about the time of Holly Sacks' deposition on October 5, 2007. Holly Sacks herself did not see a copy of the Mission Report until January 18, 2008.

7. Defendants' lack of diligence for over four years and their desire today for more preparation time on the eve of trial are not a showing of good cause for the Court to change the scheduling order or trial date.

## I. BACKGROUND

On June 17, 2003, only nine days after Richard Sacks's death, Four Seasons was already made aware that Mission Investigations was conducting or had conducted an investigation into the matter.[1]

In this case on November 1, 2005, Four Seasons' Assistant General Manager of the Punta Mita, Martin Rhomberg, testified in an FNC deposition that (1) shortly

---

[1] Defendants' Motion, at Doc. No. 208-2 (Exhibit A), page 15.

PLAINTIFF HOLLY SACKS' RESPONSE TO DEFENDANTS' MOTION FOR NEW SCHEDULING ORDER AND TRIAL DATE AND MOTION FOR SANCTIONS – Page 2

after Mr. Sacks' death,[2] he had spoken to an investigator,[3] but could not remember the investigator's name[4] who was hired by the father of Mr. Sacks[5] because "it looks like the parents believe that [Holly] did [Richard]"[6] and (2) he turned over the complete file he had on Mr. and Mrs. Sacks to Four Seasons attorneys, Mr. Cremer and Mr. Ronqillo.[7] This Four Seasons file included the letter sent to Mr. Rhomberg on June 17, 2003 by Jill K. Ysasaga, the attorney for Jeffrey Sacks and Marilyn Proctor, informing Four Seasons about Mission Investigations' work.[8]

On August 31, 2007, Plaintiff Holly Sacks first learned of an alleged report by Mission Investigations when Defendants asked about it in a discovery request.[9]

On September 25, 2007, in her Response to Defendants' production request for the Mission Report, Plaintiff Holly Sacks currently stated she did not have possession, custody or control of the Mission Report, but asserted a work product privilege should she be able to obtain the report.[10]

---

[2] Martin Rhomberg deposition of Nov. 1, 2005, attached as Exhibit B, at 95, lines 11-13.

[3] Martin Rhomberg deposition of Nov. 1, 2005, attached as Exhibit B, at 94, lines 7-8.

[4] Martin Rhomberg deposition of Nov. 1, 2005, attached as Exhibit B, at 95, lines 5-6.

[5] Martin Rhomberg deposition of Nov. 1, 2005, attached as Exhibit B, at 93, lines 5-7.

[6] Martin Rhomberg deposition of Nov. 1, 2005, attached as Exhibit B, at 94, lines 13-15.

[7] Martin Rhomberg deposition of Nov. 1, 2005, attached as Exhibit B, at 95, lines 19-25; 96, lines 1-6.

[8] Defendants' Motion, at Doc. No. 208-2 (Exhibit A), page 15.

[9] *See* Defendants' Third Request for Production to Plaintiff Holly Ann Sacks, as Representative of the Estate of Richard Todd Sacks, attached as Exhibit A.

[10] *See* Defendants' Motion, at Doc. No. 208-18 (Exhibit R), page 4.

About October 5, 2007, the date of Holly Sacks' deposition, counsel for Holly Sacks first saw a copy of the Mission Report.

On November 7, 2007, Defendants sent their Notice of Intention to Take Deposition by Written Questions to Mission Investigations.

On November 16, 2007, Plaintiffs Melvin Sacks and Marilyn Proctor filed a Motion Quash[11] and Motion for a Protective Order[12] regarding the propriety of Defendants' DWQ to Mission Investigations without first obtaining a ruling from the Court.

On December 6, 2007, the Court denied Plaintiffs Melvin Sacks and Marilyn Proctors' motion to quash and request for a protective order against Defendants DWQ subpoena to Mission Investigations.[13]

On December 21, 2007, Defendants received the Report and other documents from Mission Investigations.[14]

On January 18, 2008, Holly Sacks herself first received a copy of the Mission Report from her attorney.

## II.   DEFENDANTS' MOTION MAKES INCORRECT ASSUMPTIONS.

### A.   Plaintiff Holly Sacks Neither Knew About Nor Had Possession Of The Mission Report Before August 31, 2007 When Defendants

---

[11] Doc. No. 190.

[12] Doc. No. 191.

[13] Doc. No. 193.

[14] *See* Defendants' Motion, at 4, ¶ 14.

**Requested It.**

First, Defendants wrongfully assume that Plaintiff Holly Sacks knew of or had possession of the Mission Report at the time Defendants requested it. Clearly, she did not. Holly Sacks had never seen or heard of the Mission Report at the time of her deposition, and her counsel had only heard of it initially from Defendants' own request and had not seen a copy of it until much later, when they saw a copy of it around the time of her deposition. There is absolutely no basis for the Defendants to just assume Holly Sacks had the Mission Report. For the Defendants to make such a baseless assumption and then to file this far-reaching motion for sanctions brings into issue the credibility of all of Four Seasons' assertions.

**B.   There Was No Duty To Disclose Work Product Before Defendants Established Good Cause.**

Second, Defendants wrongfully assume that there was a duty for any Plaintiff to produce attorney work product or privileged materials prior to the Defendants asserting and establishing good cause to receive privileged attorney work product. It is Plaintiff Holly Sacks' understanding that upon this Court's confirmation that the Defendant had established good cause to receive the report, it was promptly provided to Defendants by the Mission Investigations. Thus, no Plaintiff has failed to produce the Mission Report when they should have done so, and therefore there is no wrongdoing on the part of Plaintiffs.

### C. The Hearsay In The Mission Report Of Holly Sacks' Activities Have Been Assumed To Be True By Defendants Without Foundation. The Report Is Bogus And False.

Third, Defendants wrongfully assume and apparently are asking this Court to also wrongfully assume that the hearsay and hearsay-on-hearsay comments within the Mission Report are true. They are not. Defendants should be faulted for their blatant attempt to prejudice and slander Holly Sacks before this Court with outrageous and baseless assertions[15] implying she was implicit in the death of her husband. There is no indication in any of the documents submitted in support of this Motion that Holly Sacks had any knowledge of Mission Investigations or of their report. In fact, the report under the section titled "Recommendation," specifically lists those with whom the report was discussed and Holly Sacks is not mentioned.[16]

### III. NEITHER HOLLY SACKS NOR HER CURRENT COUNSEL WAS AWARE OF THE EXISTENCE OF THE MISSION REPORT UNTIL DEFENDANTS FIRST ASKED ABOUT IT IN DISCOVERY ON AUGUST 31, 2007.

Defendants wrongfully assert that Plaintiffs and their counsel have hidden these critical facts, as stated in the Mission Report, from Defendants for years.[17] Rather, Defendants knew of the existence of the Mission Report <u>before</u> Plaintiff Holly Sacks or her current counsel ever knew of it!

---

[15] *See* Defendants' Motion, at ¶¶ 5, 6, 15, 16, 20, 21, 40, 42, 45, 46, 47.

[16] *See* Defendants' Motion, at Doc. No. 208-2 (Exhibit A), page 9.

[17] *See* Defendants' Motion, at 1-2, ¶ 1.

On June 17, 2003, only nine days after Richard Sacks's death, Four Seasons was already aware that Mission Investigations was conducting or had conducted an investigation into the matter.[18]  For the first time, on August 31, 2007, Plaintiff Holly Sacks learned of the possible Mission Investigations work when Defendants asked about it in a discovery request.[19]  Neither Holly Sacks nor her current counsel had requested any investigation by Mission Investigations.

How can Defendants be heard to complain about an investigation that Holly Sacks learned of from the Defendants themselves <u>over 4 years after</u> Defendants had known of the Mission investigation?  Defendants have had more than enough time to have acted on their knowledge, to have sought the report years ago, and to have followed up with whatever additional discovery they desired.  Defendants' own conduct does not justify sanctions of any nature against Holly Sacks or any other Plaintiff.

Defendants own lack of diligence does not justify a delay in the trial so that Defendants can now follow up on information that they have known about for over four years!  The Court should not be persuaded by Defendants sophomoric attempts to obtain more preparation time.  In any event, Holly Sacks is prepared to show the Mission Report is bogus as it might relate to Richard and Holly Sacks.

**IV.  AT NO TIME DID ANY PLAINTIFF VIOLATE A DUTY, A**

---

[18] *See* Defendants' Motion, at Doc. No. 208-2 (Exhibit A), page 15.

[19] *See* Defendants' Third Request for Production to Plaintiff Holly Ann Sacks, as Representative of the Estate of Richard Todd Sacks, attached as Exhibit A.

**FEDERAL RULE OF CIVIL PROCEDURE, OR A COURT ORDER REGARDING THE MISSION REPORT.**

 **A.** **There Was No Duty To Disclose The Mission Report Or The Supposed Witnesses Described Therein When The Report And Witnesses Described Were Not Intended To Ever Be Used To Support Plaintiffs' Claims.**

The Four Seasons Defendants have asserted that Plaintiffs should have disclosed "the existence of the Mission Investigations report in their initial disclosures as they were obligated to do under the Rules,"[20] despite the fact that Holly Sacks and her attorney were unaware of the Report.  Defendants are just plainly wrong.

Pursuant to Federal Rule of Civil Procedure 26(a)(1)(A) and (B), there is no duty to disclose the identity of witnesses or the description (or copy) of documents when the disclosing party has no intention to ever use the witness or document to support its claim.[21]  Fed. R. Civ. P. 26(a)(1)(A) states, in relevant part:

> "...a party must, without awaiting a discovery request, provide to other parties: **the name** and, if known, the address and telephone number **of each individual** likely to have discoverable information **that the disclosing party may use to support its claims** or defenses, **unless solely for impeachment**, identifying the subjects of the information."[22]

Fed. R. Civ. P. 26(a)(1)(B) states, in relevant part:

---

[20] *See* Defendants' Motion, at 7, ¶ 26.

[21] Fed. R. Civ. P. 26(a)(1)(A), (B).

[22] Fed. R. Civ. P. 26(a)(1)(A) (emphasis added).

PLAINTIFF HOLLY SACKS' RESPONSE TO DEFENDANTS' MOTION FOR NEW SCHEDULING ORDER AND TRIAL DATE AND MOTION FOR SANCTIONS – Page 8

> "...a party must, without awaiting a discovery request, provide to other parties: a **copy of, or description by category and location of, all documents**, that are in the possession, custody, or control of the party and that the disclosing party <u>**may use** to support its claims</u> or defenses, unless solely for impeachment."[23]

The Committee Notes of 2000 to Rule 26 states that the "disclosure obligation is narrowed to cover only information that the disclosing party may use to support its position."[24] The term "use" includes:

> "any use at a pretrial conference, to support a motion, or at trial . . . , apart from use to respond to a discovery request; use of a document to question a witness during a deposition . . ."[25]

Here, no matter when the information was received, no Plaintiff has ever intended any possibility of using the Mission Report to support his or her claims or the witnesses who fabricated the stories described therein. Therefore, no Plaintiff has ever had the duty to disclose information about the Mission Report <u>without</u> a discovery request by Defendants.

   **B.   Plaintiffs Have Properly Asserted Work Product And Had No Duty To Produce The Mission Report Until The Court Ruled On The Matter.**

The Mission Report would have to have been disclosed if it would be

---

[23] Fed. R. Civ. P. 26(a)(1)(B) (emphasis added).

[24] Committee Notes of 2000 to Rule 26, at Purposes of amendment.

[25] Committee Notes of 2000 to Rule 26, at Subdivision (a)(1).

responsive to a specific discovery request, unless it is protected by work product privilege.[26]  Here, when Defendants requested specifically the production of Mission Report on August 31, 2007, Plaintiff Holly Sacks did not have possession, custody or control of the document but went ahead and responded by asserting work product privilege should she ever obtain such a report.  *See* Plaintiff Holly Sacks' Responses to Defendants' Third Request for Production on September 25, 2007.[27]

Thereafter, Plaintiff Holly Sacks' attorney sought to find this Mission Report that Defendants seem so desperately to want.  About the time of Holly Sacks' deposition on October 5, 2007, her attorney attained a copy of the Mission Report.  At that time, the Mission Report was properly withheld because Plaintiff had already properly asserted the work product privilege, and more importantly, Melvin Sacks and Marilyn Proctor, who had a copy of the Report, had already lodged their privilege objection and that issue was in play.

---

[26] *Intel Corp. v. VIA Techs., Inc.*, 204 F.R.D. 450, 452 (N.D. Cal. 2001) ("FRCP 26(a) does not expressly require disclosure of work product.").

[27] Defendants' Motion, at Doc. No. 208-18 (Exhibit R), page 4.

PLAINTIFF HOLLY SACKS' RESPONSE TO DEFENDANTS' MOTION FOR NEW SCHEDULING ORDER AND TRIAL DATE AND MOTION FOR SANCTIONS – Page 10

## V. DEFENDANTS HAD A DUTY TO DISCLOSE INFORMATION OF WITNESSES THAT MAY BE USED TO SUPPORT THEIR DEFENSES, BUT THEY HAVE FAILED TO TIMELY DO SO.

Conversely, pursuant to Rule 26(a), it is crystal clear that Defendants owed Plaintiffs a duty to disclose any witnesses and the description or copy of documents it may use at trial. By their Motion, Defendants assert the existence of and the information in the Mission Report is "critical to the defense of this case,"[28] "a material piece"[29] and "key piece"[30] of evidence, and "forms a substantial basis for Defendants' affirmative defenses."[31]

If the Mission investigation was so important to Defendants and Defendants had been aware of it over four years, why did they wait until now to disclose it to Plaintiff Holly Sacks? Why did it take Defendants until now to follow up on information they had in their hands? Why do Defendants blame Plaintiffs for something Defendants did to themselves in not following up with appropriate discovery?

Nowhere have Defendants ever referenced the Mission investigation in their Rule 26(a)(1) Initial Disclosures on August 2, 2004[32] or in their Amended

---

[28] *See* Defendants' Motion, at 12, ¶¶ 43-44.

[29] *See* Defendants' Motion, at 7, ¶ 28.

[30] *See* Defendants' Motion, at 18, ¶ 29, 30.

[31] *See* Defendants' Motion, at 14, ¶ 55.

[32] Attached as Exhibit C.

PLAINTIFF HOLLY SACKS' RESPONSE TO DEFENDANTS' MOTION FOR NEW SCHEDULING ORDER AND TRIAL DATE AND MOTION FOR SANCTIONS – Page 11

Disclosures on September 21, 2005,[33] even though they now say this is critical to their defense! It was not until August 2, 2007 that Defendants first produced the letter to Mr. Rhomberg about the Mission Investigations to Plaintiff Holly Sacks (over four years after they had possession of it). And it was contained in a large box with about 800 pages of documents, and was such a difficult to read copy of the letter that referenced Mission Investigation (Defendants are believed to have the original),[34] that one would have to really search to locate any Mission reference. (*See* Plaintiff's copy, attached as Exhibit E).

Defendants clearly knew of the existence of the Mission investigation even before Holly Sacks or her counsel. This raises pertinent questions that require an answer. Why did the Defendants not reveal the report and the name of its author or other witnesses to Plaintiff Holly Sacks, as required by Rule 26 Disclosures?

Plaintiff also requests the Court evaluate if Defendants' unreasonableness and baseless assumptions in securing this "emergency" hearing, requiring the Plaintiffs themselves to appear, justifies sanctions of cost and expenses against Defendants and their counsel.

The Defendants were under a duty to have timely revealed to the Plaintiff, Holly Sacks, existence of this report, its author, and other individuals whom it now claims are witnesses in this case. Pursuant to Rule 26(a), Defendants were required

---

[33] Attached as Exhibit D.

[34] *See* Four Seasons Punta Mita Bates No. 235.

PLAINTIFF HOLLY SACKS' RESPONSE TO DEFENDANTS' MOTION FOR NEW SCHEDULING ORDER AND TRIAL DATE AND MOTION FOR SANCTIONS – Page 12

to have disclosed the information.

Indeed, it is strange that the Defendants now seek sanctions against Holly Sacks for her failure to produce a report she did not even know existed, and of which the Defendants themselves were fully aware but failed to disclose when they had a duty to do so.

## VI. PLAINTIFF SHOULD NOT BE PREJUDICED BY AND BE FORCED TO ACCOMMODATE DEFENDANTS' GROSS LACK OF DILIGENCE OR INCOMPETENCE.

Plaintiff Holly Sacks has properly answered Defendants discovery requests regarding investigations into her husband's death.  Yet, Defendants have done <u>nothing</u> to follow up on her assertion of work product and her description of the nature of such privilege.  And Defendants have the audacity to present to the Court that they are "blameless."[35]

> Fed. R. Civ. P. 26(b)(5)(A) states:
>
> > "When a party withholds information . . . by claiming that it is privileged . . ., the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection."[36]

Specifically when in 2004, Defendants first requested to Plaintiff Holly Sacks all documents:

---

[35] *See* Defendants' Motion, at 13, ¶ 47.

[36] Fed. R. Civ. P. 26(b)(5)(A).

PLAINTIFF HOLLY SACKS' RESPONSE TO DEFENDANTS' MOTION FOR NEW SCHEDULING ORDER AND TRIAL DATE AND MOTION FOR SANCTIONS – Page 13

> "prepared by an investigator, whether public or private, relating to the death of Richard Todd Sacks",

Plaintiff responded, in relevant part:

> "This request includes consulting only expert information and attorney work product relating to witness statements and liability evaluations."[37]

By this response, Plaintiff gave notice to Defendants about the nature of the items not produced (but which, incidently, had nothing to do with the Mission Report). Yet Defendants chose to do nothing to follow up on Plaintiff Holly Sacks' answer since November 5, 2004!

To this day, Defendants still have not properly nor diligently followed up with Plaintiff on this matter. Instead, Defendants' counsel have made wrong and completely baseless assumptions and have made Holly Sacks appear to have "hidden information"[38] from Defendants when this is not the case at all! It is not Plaintiff's burden to hand over privileged information without a proper request or motion by Defendants and a Court Order. Rather, it is defense counsel's responsibility to follow up and dig up evidence in support of their defense– a responsibility that they have neglected to do or have done inefficiently for over four years and have now only superficially questioned at the eve of trial!

## VII. CONCLUSION

Plaintiff Holly Sacks incorporates by reference Plaintiff Melvin Sacks and

---

[37] Defendants' Motion, at Doc. No. 208-5 (Exhibit D), page 8.

[38] *See* Defendants' Motion

PLAINTIFF HOLLY SACKS' RESPONSE TO DEFENDANTS' MOTION FOR NEW SCHEDULING ORDER AND TRIAL DATE AND MOTION FOR SANCTIONS – Page 14

Marilyn Proctor's Response to Defendants' Motion for a New Scheduling Order and Trial Date and Motion for Sanctions.

There is no good cause for the Court to order sanctions or to extend the deadlines or to change the trial date because:

1. There was no "late disclosure" by Plaintiffs because there was no duty to disclose privileged documents.  (Holly Sacks did not even know of the existence of the Report.)

2. In contrast, Defendants had a duty to disclose the information they had on Mission Investigations but failed to do so even when they had the information in their hands since 2003 and no doubt intended to use the information to support their defense.

3. There is no smoking gun in the Mission Report of Richard Sacks' ingestion of ecstacy or for any valid defense as the hearsay in the Report was a total fabrication, and untrue as to Richard and Holly Sacks.

4. It is Defendants own lack of diligence over a four year period that has caused this supposed "emergency" to Defendants to find any (even tangential and unsubstantiated, inadmissible) evidence to support their defense.

5. Defendants' lack of diligence and oversight in following up on the Mission investigation when Defendants have had such information over four years ago and Plaintiffs had timely asserted the work product privilege obviate good cause for sanctions or a resetting.

6. Because Defendants have already received a copy of the Report from Mission Investigations itself, any delay of a month or two now in any Plaintiff's production of the Mission Report is insignificant compared to the magnitude of Defendants' failure to act on information they already were aware of for over <u>four years</u>.

7. Neither Holly Sacks nor her counsel even knew about the existence of the Mission Report until August 31, 2007, when Defendants asked about it.

WHEREFORE, Plaintiff Holly Sacks asks the Court to deny Defendants' Motion for a New Scheduling Order and Trial Date and Motion for Sanctions; order Defendants and their counsel pay cost and expenses to Plaintiff; and order any other relief which Plaintiff shows herself justly entitled.

Respectfully submitted,

TURLEY LAW FIRM

　　/s/ Windle Turley
Windle Turley
State Bar No. 20304000
Linda Turley
State Bar No. 20303800
T Nguyen
State Bar No. 24051116
6440 North Central Expressway
1000 Turley Law Center
Dallas, Texas 75206
Telephone No. 214/691-4025
Telecopier No. 214/361-5802

ATTORNEYS FOR PLAINTIFF
HOLLY SACKS

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above document has been served upon all counsel listed below on this 21st day of January, 2008.

Marcos G. Ronquillo
Kirk Willis
José Gonzalez
Godwin Gruber, L.L.P.
Renaissance Tower
1201 Elm Street, Suite 1700
Dallas, TX 75270-2084
mronquillo@godwingruber.com
kwillis@godwingruber.com
jgonzalez@godwingruber.com

Williams Cremer
Cremer, Kopon, Shaughnessy
180 North LaSalle, Suite 3300
Chicago, IL 60601
wcremer@ksslaw.com

Winford L. Dunn
State Bar No. 06255000
Dunn, Nutter & Morgan, L.L.P.
3601 Summerhill Road
Texarkana, TX 75503
wldunn@dnmlawfirm.com

          /s/ Windle Turley
     Windle Turley